SCHLEY, assignee, *vs.* SCHOFIELD & SON.

On a rule against the sheriff, issues involving both fact and law having beeen tried by the court, without a jury, the parties consenting to that mode of trial, and the court having refused to award the fund absolutely to either of the two competing liens, but on the contrary having ordered it held up to await the sale of certain machinery, and Schofield & Son, one of the contestants for the money, having excepted to the decision, and brought the same to the supreme court by writ of error, and this court having thereon adjudged "that the judgment of the court below be reversed, on the ground that the court erred in passing the order to hold up the fund to await the future sale of the machinery, it being the opinion of this court that Schofield & Son's judgment had the superior lien on the money raised from the sale of the real estate," the effect of this judgment of the supreme court was only to vacate the erroneous judgment of the court below, and the legal consequence was a new trial, and not the rendition of a judgment, without trial and as matter of course,

in favor of Schofield & Son for the fund in controversy. While it was competent for this court to have directed such a judgment to be rendered, it did not in fact so direct in express terms, or with due legal certainty.

JACKSON, J., dissented.

Judgments. New trial. Practice in the Supreme Court. Before Judge GIBSON. Richmond Superior Court. October Term, 1877.

This case was before this court in 59 *Ga.*, 537. Upon filing the remittitur counsel for Schofield & Son proposed to take the following order:

" The remittitur from the supreme court having been received, reversing the decision of this court ' on the ground that the court erred in passing the order to hold up the fund to await the future sale of the machinery, it being the opinion of this court that Schofield & Son's judgment had the superior lien on the money raised from the sale of the real estate ' :

"Ordered, that the same be entered on the minutes of this court, and be enforced.

"Ordered, that Charles H. Sibley, sheriff of Richmond county, pay over to J. S. Schofield & Son, or their attorney, the sum of $522.50, admitted by his return to be in his hands."

Counsel for Schley, assignee, objected to this order, insisted that the judgment of the supreme court, in effect, granted a new trial, and claimed a re-hearing, submitting affidavits as follows: 1. The affidavit of Schley that he did not testify upon the previous trial that the machinery was not put up ; that such was not the fact, but three-fourths thereof was put up immediately upon its arrival, and is still up and running. 2. The affidavit of Phillip A. Schley to the same effect.

The objection was overruled, and the order allowed. To this ruling Schley, assignee, excepted.

HOOK & WEBB, for plaintiff in error.

FRANK H. MILLER, for defendants, cited Code, §4285 ; 49 *Ga.*, 303 ; 56 *Ib.*, 520.

BLECKLEY, Justice.

As a general rule, where the writ of error is founded upon a trial below in which both law and fact were involved, and where the complaint is that the plaintiff in error lost his case when he was entitled to gain it, and where this court is of opinion that he was entitled to gain it, and where, for that reason, the judgment of the court below is reversed, a new trial follows unless this court, by way of direction, dictates something else. A new trial follows because the former trial terminated in a wrong result. No mere suspension took place, but the trial was concluded ; it was over. If there were a finding of the facts, as by a verdict, and this finding were in favor of the plaintiff in error, and became fixed upon the record, and if the error was simply in applying the law to the *found and fixed* facts, then a reversal would leave something for the court below to fall back upon ; the verdict or other record finding of the facts, would furnish a basis for entering up a correct judgment, without either direction to that effect from this court, or a new trial. But when there is no verdict for the plaintiff in error, nor any other formal and fixed finding of the facts, how can such a verdict or finding be dispensed with, and a different judgment be rendered from that which was formerly rendered, unless this court gives some special direction to the case? It cannot be insisted that because the evidence on which the superior court acted is set out in the bill of exceptions, or in a brief of the testimony, there is no occasion to have the facts found. The difference between a full and faithful report of the evidence, and a verdict or finding thereon, must be obvious to everybody. Where the judge, by consent, exercises the functions of a jury, if he makes no finding, general or special, for the party entitled to prevail, that party cannot prevail without a new trial, except by the

mandate of this court. Be the trior of the facts judge or jury, no party can prevail, as a general rule, without some finding by such trior in his favor. Where the judge acts as a jury, no *separate* finding of the facts is necessary, but the requisite finding is included implicitly in his general judgment. In such case, therefore, a reversal of his general judgment vacates all he has done. We do not mean to say that he might not find the facts specially, if he thought proper to do so, or that, if he so found them, a reversal of a formal judgment rendered thereon would vacate the special finding. The reversal of an erroneous judgment based on a correct verdict, does not open the verdict, or should not do so ; and a special finding of the facts by the judge would doubtless be the precise equivalent of a verdict. It could be made a part of the record proper, so that a motion in arrest of judgment might be based thereon. But who would ever think of moving in arrest of judgment upon the raw evidence set out in a bill of exceptions or in a brief of the testimony ? Mere evidence is food unassimilated ; a verdict or finding is the tissue into which it is converted by assimilation. That bare reversal here is generally followed by a new trial below, see 14 *Ga.*, 653 ; 56 *Ib.*, 520, in connection with 54 *Ib.*, 492 ; and compare 49 *Ib.*, 303.

It is not disputed that it was competent for this court, in its judgment on the former writ of error, to have directed the superior court to substitute some other judgment in lieu of the one which was reversed, and thus dispense with a new trial. But a judgment of this court, as well as that of any other, ought to be clear and certain. When more than a mere reversal is intended, the additional matter should not be stated simply by way of a reason for the reversal, as was done when this court said, " it being the opinion of the court that Schofield & Son's judgment had the superior lien on the money raised from the sale of the real estate ;" but there should be a mandatory direction to do or to adjudge whatever this court intends shall be done or adjudged. The reasons given for a reversal, whether expressed in the judg-

ment or in the opinion, are to be respected and applied in conducting the new trial, without any direction to that effect; but to embody these reasons in a new judgment based on the former trial, where there has been no verdict and no special finding of the facts, requires a direction from this court in express terms. And what we direct, is to be ascertained from the judgment which we render; the direction is judgment, not mere opinion, and as judgment it must appear. What the judgment *ought* to have contained is manifest, in the present case, from the opinion of the court as then written out at length by my brother Jackson; but what the judgment *does* contain is a reversal with a reason for it, but unattended with any direction whatever. A direction ought to have been incorporated; no doubt we intended to do it, or thought we had done it; but what we intended or what we thought is not the question. What did we adjudge? It is clear now, that we neglected our duty, or at least I did, in not making the judgment as full as it should have been; but no degree of regret for our inattention or oversight, can enlarge the judgment. It is a mere judgment of reversal, nothing more. No importance is attached to the affidavits produced by Schley's counsel showing a mistake in briefing the testimony. The new trial results from no special circumstance of this sort, but solely from the general rule that reversal here leads to a new trial below.

Judgment reversed, on the ground that the court erred in ordering the fund paid to Schofield & Son without a new trial. Let that part of the order, and whatever depends upon it, be vacated; and let the issues between the contesting creditors be tried over, with the former judgment of this court as a rule of decision, so far as the same may be applicable.

WARNER, Chief Justice, concurred.

JACKSON, Justice, dissenting.

The sole question made, is whether the plaintiff in error was concluded by the judgment rendered in this case when

here before, and reported in 59 *Ga.*, 537. My brethren think that he is not concluded, but may litigate again. I think that he is concluded, and cannot litigate further. For this opinion I submit the reasons which follow :

Schley claimed under a lien for machinery furnished defendant in *fi. fa.*; Schofield & Co. claimed by virtue of a judgment obtained against defendant. The judge of the superior court of Richmond county, passed upon the case by virtue of a consent order that "all questions of law and fact arising under said issue, and *the validity of the claims of the two fi. fas.* to the balance on hand, should be referred to Hon. William Gibson, presiding judge, for decision without the intervention of a jury." The lien was older than the judgment, and if valid would take the money ; if it was invalid, Schofield's judgment would take it. Judge Gibson held that the lien was valid, and passed an order that the money be held up to await the levy of the lien upon the machinery, and if that was not sufficient to pay it, then that the money arising from the sale of the realty, which was the sum in dispute here, should be applied to that lien as superior to the judgment. That judgment of the judge was reversed by this court, as reported in 59 *Ga.*, 537, and the following remittitur returned to the superior court : " Reversed on the ground that the court erred in passing the order to hold up the fund to await the future sale of the machinery, it being the opinion of this court that *Schofield & Son's judgment had the superior lien on the money raised from the sale of the real estate.*" Moreover, the following head-note was agreed upon by this court unanimously, as appears in 59 *Ga.*, 537 : " Machinists and manufacturers of machinery, have no lien on real estate for machinery furnished, unless the machinery furnished is attached to, and becomes incorporated with, the realty for which it was furnished. If boxed up and never used about the mill, a judgment lien of older date than the judgment of the manufacturer or machinist, though younger than the record of the asserted lien, will be superior to such lien on the realty, and will *take the money for which the realty sold.*"

Moreover, in the opinion delivered before this whole court, occur these words : " This ruling disposes of this case, and makes it unnecessary to determine any other question made ;" and also these words :   " But the former view of this case controls it, and we reverse the judgment because the court *erred in not directing that the money be paid to Schofield & Son.*"

My opinion is, that if there ever was a case *res adjudicata*, this is the case. The remittitur of itself is clear. It declares that "the court erred in passing the order to hold up the fund to await the future sale of the machinery, it being the opinion of this court, that Schofield & Son's judgment had the superior lien on the money raised from the sale of the real estate" ; as much as to say that it is the judgment of this court that the court no longer hold up the fund, but pay it over to Schofield & Son ; but because the word "opinion" is used instead of the word "judgment," the case is to be tried over.

If, however, the remittitur were not plain, the head-note and opinion, all of which the court below had before it when it was determined by it that the case was at an end and could not be tried again, leaves it beyond doubt. There were some ten or a dozen assignments of error in this case when here in 59 *Ga.*, *all* of which it was the duty of this court to pass upon and determine if the case had not been finally disposed of, but none of which were touched, because the case was at an end ; yet, now, it is ruled not to be at an end.   Mark the language :   " We reverse the judgment because the court erred in not directing that the money be paid to Schofield & Son," and "this ruling disposes of this case and makes it unnecessary to determine any other question made."   Why may not the syllabus agreed upon by the court, and the opinion read in the hearing of all the bench, not *obiter*, but on the direct point made, be invoked to elucidate the judgment announced in the remittitur, and trans·mitted to the court below ? I see no reason why they should not be so invoked.

There are grave reasons of public policy why this judgment ought not to be opened and sent back for a new trial upon the grounds made in this motion. .

Delay of justice is often its denial, and much of the opposition to the organization of this court, and · which delayed it so long, was the fear that litigation would be interminable. Hence the stringent provision in the organic law, that the case must be determined at the first term unless providentially prevented, and the judgment be rendered at least by the second; but what do these provisions avail, if after final judgment in this court the case may be again opened and tried over?

The reason for the application now made, as contained in the record, is a deposition of one of the Messrs. Schley, that he did not swear on the former trial as the former bill of exceptions stated. That record asserts that he swore that the machinery was never put up or used, but remained boxed up as it was first received, and was worth its full invoice price to him, but would not sell for more than $500.00 at public outcry. Now in this record at bar, he deposes that he never made that oath, but that the machinery was used and attached to the real estate; and another affidavit is made to the same effect by another gentleman.

I can imagine nothing more dangerous than to allow a witness, after the decision in a cause has been rendered in the highest court of appeals, and it has been ascertained on what point the case turned in that court, to contradict the solemn record of what he did swear, and to change it so as to meet the law of the case as ruled. Better a thousand times that injustice should be done in one case, than that such a door should be thrown open for perjury. The high character of the witnesses in this case,' and the honored name they bear, forbid that such a suspicion should arise in the case at bar; but if they were permitted so to contradict the record, the rule must be general, and the door be thrown open to all; and in these days, when litigants are allowed to testify in their own cases, thousands would fraudulently and

falsely enter through that door, and litigation would never end.

My brethren rest their judgment of reversal upon 14 *Ga.*, 653 and 56 *Ga.*, 520. The case at bar is distinguishable from both.

The first only rules that unless this court otherwise direct, a mere reversal, without more, will set the case for new trial; and there the judgment was reversed for error in the charge, the question being between various applicants for permanent letters of administration, and the court having charged that the letters of one were not vacated by his removal out of the state. And the point in the case was, whether error was committed by the ordinary in granting temporary letters to take care of the estate until all the conflicting applications could be settled. There is not a syllable in remittitur, or head-note, or opinion, that tends to show a final judgment of the case in this court.

The case in 56 *Ga.*, 520, is fully as much unlike this at bar.

There it was ruled in the second head-note, thus: "After a judgment in favor of a creditor, upon a money rule against the sheriff, has been reversed on the ground that the creditor's lien is not superior, but inferior to a competing order setting the fund apart for the debtor's family under the homestead and exemption laws, the creditor, upon the new trial, may still attack the order as void for want of jurisdiction in the ordinary when it was granted, *that question not having been made on the first trial, nor passed upon by the supreme court.* In such a case *the validity of the order* is not *res adjudicata*, but only its priority as compared with the creditor's lien."

But in this case now before us, the *validity* of the lien of Schley, as assignee, was the only point in issue; it was passed upon by the judge, distinctly held by him to be valid, and that judgment was reversed and it was pronounced *invalid* by us.

Not only so, but it was the question made, and evidence

was in and uncontradicted, that the machinery was not attached, but boxed up as it came from the north ; and on that fact proven and uncontradicted, this court rested its judgment that the lien was *invalid*, and that Schofield & Son were entitled to the money. The ruling in 56 *Ga.*, 520, is to the effect that if the order there had been passed upon, the case would have been *res adjudicata ;* and that if the question of want of jurisdiction in passing the order in the ordinary, had been made below and passed upon by the supreme court, it could not have been made again. So that the case in 56 *Ga.*, so far from being authority to sustain the judgment of reversal in this case now at bar, is direct authority to sustain the judgment of the court below.

For these reasons, while personally I am gratified that my old friend from boyhood, Judge Schley, gets another hearing, judicially, I feel it my duty to dissent from the judgment which awards it.