## A01A0806, A01A0807. SCOTT v. BATTLE; and vice versa.
### (548 SE2d 124)

MILLER, Judge.

Plaintiff Lee Scott initiated this case by petitioning for a writ of possession, alleging that defendant Donald E. Battle d/b/a Divine Faith Outreach Ministries (also known as Divine Faith Ministries) failed to pay $36,000 in rent. Battle answered and counterclaimed, first for attorney fees and then for fraudulent inducement, unjust enrichment, breach of contract, conversion of personalty, and punitive damages, based on allegations that Scott misrepresented to Battle that the premises could be used in part as a day-care facility but that, after Battle spent $100,000 to clean and improve the property, Scott refused to cooperate and sign necessary documents to obtain a county permit and converted certain personalty left on the premises when Battle vacated.

By consent, a writ of possession was issued and the premises were returned to Scott, while issues of past due rent and those raised in the counterclaim were tried before a jury. The jury found for Battle against Scott on the claim for rent and further found for Battle against Scott on the counterclaim, awarding Battle $75,000. In a special interrogatory, the jury found by clear and convincing evidence that Scott engaged in "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care [raising] the presumption of conscious indifference to the consequences[,]" and imposed punitive damages in the amount of $571,000. The trial court denied Scott's motions for judgment notwithstanding the verdict and for new trial but reduced the punitive damage award to $250,000.

In Case No. A01A0806, Scott enumerates the denial of his motion for new trial, arguing that Battle's counterclaim was supported only by illegally admitted evidence and that the punitive damage award was unauthorized. Scott further contends the trial court erroneously construed the lease agreement and so erred in admitting parol evidence. In Case No. A01A0807, Battle objects to the final judgment reducing the jury's punitive damage award to $250,000. We affirm in each case.

Viewed in the light most favorable to Battle, who obtained the verdicts, the evidence showed the following: Battle as Buyer and Scott as Owner signed a one-page document containing Battle's offer (subject to a financing contingency) to purchase Scott's real property on Tara Boulevard in Jonesboro for $1,358,000. The document recites that a $9,000 "Deposit herewith paid" was made, yielding $1,349,000 as the "Mortgage Amount." The document further provides: "Borrower [sic] shall lease the . . . property for $9,000 per month for a period of two years[,]" during which time the purchase could be completed. "This *offer* [was] also subject to [additional] stipulations[,]"

such as "Buyer/Tenant" shall have possession within "60 days of signing this *agreement*," and Owner agrees that Buyer may immediately open a restaurant and use unoccupied office space "upon the signing of this *agreement*."[1]

Scott admitted that this document was merely an " 'outline agreement of [the parties'] understanding, and [that they] were supposed to sign a more detailed lease and sales contract at a later date,' " but never did. Battle testified that the complete agreement, never reduced to writing, contemplated that the premises would be used for a 24-hour day-care center that would generate $35,000 in monthly income. Also a teen club was envisioned. Scott seemed enthusiastic over the prospect of the property being cleaned and renovated to house Battle's Outreach program. Volunteers performed substantial renovations of the building, clearing out truck loads of accumulated junk and adding ceramic tile and plush carpet to the floors, new seating in a restaurant area, new paint on the walls, new wiring and properly grounded outlets inspected by the fire marshal, and installed a crash door on every outlet. Also new sprinkler heads were installed at the direction of the fire marshal. After Battle refused a demand that he share the proceeds of the Divine Ministries with Scott, however, Scott as owner of the premises refused to cooperate with Battle to obtain the necessary loans and permits to complete the needed renovations. This in turn deprived Battle of substantial anticipated revenues, and he stopped trying to pay the rent. By that time, Battle's improvements to the property had added $300,000 in market value.

## Case No. A01A0806

1. The third enumeration will be considered first. Here, Scott contends the trial court erred in admitting parol evidence to contradict and alter the terms of the written contract.

"Parol contemporaneous evidence is generally inadmissible to contradict or vary the terms of a valid written instrument."[2] Parol evidence is admissible, however, to show a *subsequent* agreement;[3] to show the contract was obtained by fraud; to show the complete agreement when the writing is not the entire contract between the parties and so the contract is partly in writing and partly in parol;[4] and to show a failure of consideration.[5] And "[w]hen a contract is not wholly

---

[1] (Emphasis supplied.)
[2] OCGA § 24-6-1.
[3] *Covington v. Brewer*, 101 Ga. App. 724, 729-730 (3) (115 SE2d 368) (1960).
[4] *Crooker v. Hamilton*, 3 Ga. App. 190, hn. 4 (59 SE 722) (1907).
[5] *Boynton v. Twitty*, 53 Ga. 214, 218-219 (1874).

in writing, but is partly in writing and partly in parol, the entire contract is considered as one in parol."[6]

Scott admitted under oath that the writing at issue did not constitute the final agreement. There is no merger clause to this offer/agreement. And the writing does not specify a date by which the two-year lease must commence nor expressly commit Scott to lease the premises. Even assuming, without deciding, that the ambiguous writing constituted an enforceable agreement, the trial court did not err in permitting Battle to testify that he and Scott subsequently agreed on additional terms such as Battle cleaning and improving the premises so he, as the sole tenant, could use the facility for income-generating day care, which purpose Scott later maliciously undermined.

2. The first enumeration contends the trial court abused its discretion in denying Scott's motion for new trial. Scott argues that Battle's alleged interest in the improvements made to the property was proven solely with illegally admitted evidence. Specifically, he argues that no damages were authorized by Battle's counterclaim because all the monies expended and work donated came from Divine Faith Ministries, Inc., a separate legal entity from Battle's trade names and not a party to this action.

Battle testified he owned the improvements and attempted to show his interest in the donated expenditures and property with a resolution of the Board of Directors of Divine Faith Ministries, Inc. authorizing loans to Battle's Outreach program (an unincorporated entity) which were to be repaid over three years. This resolution was purportedly executed by Battle and other Board members on July 20, 1998, in the presence of Brenda F. Jones, Notary Public. Scott challenged the authenticity of this document on the basis that Jones was not authorized to serve as a lawful Notary Public in Clayton County until January 1999. "[T]he Georgia rule favors admissibility. If the relevancy of the offered evidence is in doubt, it should be admitted and sent to the jury under proper instructions. This is true no matter how slight the probative value, and even though it is prejudicial to the opposing party."[7]

Battle himself confirmed that the document accurately represented what took place at a Divine Faith Ministries, Inc. board meeting on July 20, 1998, and that it was not prepared at a later date. Consequently, Scott's circumstantial challenge to the document's authenticity did not deprive it of all probative value and the trial

---

[6] (Citations omitted.) *Shutt & Co. v. Andrews*, 47 Ga. App. 530, 531 (2) (171 SE 219) (1933). Accord *Plumlee v. Davis*, 221 Ga. App. 848, 852 (3) (473 SE2d 510) (1996).

[7] (Citations and punctuation omitted.) *Patton v. Smith*, 119 Ga. App. 664, 665 (2) (168 SE2d 627) (1969).

court correctly admitted it, for whatever weight the jury chose to give it.[8] The $75,000 compensatory damages awarded by the jury was within the range of the evidence and appears to be calculated to recompense Battle only for his special interest in the property,[9] consistent with the benefit unjustly conferred on Scott.[10] The trial court did not abuse its discretion in refusing a new trial as to Battle's counterclaim.

3. The jury awarded Battle $571,000 in punitive damages, which sum represented the total damages demanded by Scott in a separate suit against Battle in superior court. In framing a judgment, the trial court reduced the award to the $250,000 limit imposed by OCGA § 51-12-5.1 (g). Scott nevertheless contends the trial court erred in refusing a new trial regarding punitive damages, arguing the jury's award "was manifestly based on undue passion and prejudice . . . and was patently awarded for the improper purpose of compensating Battle."

In Georgia, the purpose of punitive damages is to deter the repetition of reprehensible conduct by the defendant,[11] and they are not awarded as compensation to a plaintiff.[12] Subject to OCGA § 51-12-5.1 (g),[13] the amount of punitive damages to be awarded (if any) is determined according to the enlightened conscience of a fair and impartial jury.[14] "There is no other measure of damages for such a case."[15] Here, the jury's award, matching the amount Scott demanded for damage Battle allegedly caused the property, is rationally related to the legitimate goal of depriving the tortfeasor of the profitability of his wrongdoing.[16] Under the circumstances, the trial court did not abuse its discretion in refusing to overrule the jury's award of punitive damages in its entirety.

### Case No. A01A0807

4. In two related enumerations of error, Battle contends the trial court erred in reducing the jury's punitive damage award to the

---

[8] Cf. *Ford Motor Co. v. Hanley*, 128 Ga. App. 311, 316 (4) (196 SE2d 454) (1973).

[9] See *Witt v. Nesar*, 145 Ga. 674, 676 (89 SE 747) (1916).

[10] See *Zampatti v. Tradebank Intl. &c.*, 235 Ga. App. 333, 340 (5) (508 SE2d 750) (1998) (measure of damages under quantum meruit or unjust enrichment is based on the value of the benefit conferred and not upon the cost to render the service).

[11] *Hosp. Auth. of Gwinnett County v. Jones*, 261 Ga. 613, 614 (1) (409 SE2d 501) (1991).

[12] OCGA § 51-12-5.1 (c).

[13] For any tort action not involving product liability or a specific intent to cause harm, "the amount [of punitive damages] which may be awarded . . . shall be limited to a maximum of $250,000.00." OCGA § 51-12-5.1 (g).

[14] *Roberts v. Chapman*, 228 Ga. App. 365, 367 (3) (492 SE2d 244) (1997).

[15] *Central R. & Banking Co. v. Roberts*, 91 Ga. 513, 519 (6) (18 SE 315) (1893).

[16] See *Holman v. Burgess*, 199 Ga. App. 61, 63 (404 SE2d 144) (1991).

$250,000 authorized by OCGA § 51-12-5.1 (g). We disagree.

Unless the claim involves product liability or unless there is a finding that the defendant acted (or failed to act) with a specific intent to cause harm, OCGA § 51-12-5.1 (g) provides that the amount of punitive damages which may be awarded "shall be limited to a maximum of $250,000.00." In *McDaniel v. Elliott*,[17] the Supreme Court of Georgia adopted a "bright line rule requiring a *party* to request both a charge on specific intent to cause harm and a separate finding of specific intent to cause harm by the trier of fact in order to avoid the [OCGA § 51-12-5.1 (g)] cap on punitive damages."[18]

Battle's portion of the pre-trial order does not request any special interrogatories with respect to punitive damages. And while the trial court's verdict form includes the special interrogatory on whether plaintiff (Scott) acted with wilful misconduct, malice, fraud, wantonness, oppression, et cetera, so as to authorize the imposition of punitive damages in some amount, it does not include a special interrogatory on whether there was specific intent to cause harm. Battle concedes he did not request such an interrogatory nor any jury instruction on specific intent to cause harm. Nevertheless, he contends that Scott procedurally waived any right to request a reduction in punitive damages because he failed to request a special interrogatory or a jury charge on specific intent to cause harm, because he failed to object to the charge as given and to the form of the verdict, and because he did not raise this issue until a post-trial hearing on a motion for new trial.

(a) Punitive damages in an amount greater than $250,000 are not authorized under Georgia law unless and until certain conditions are met.[19] As the *claimant* for punitive damages, Battle was the party who bore the onus to meet the procedural requirements, for it was he who was attempting to alter the status quo.[20] Therefore, Battle had the responsibility to request appropriate special interrogatories and jury instructions tailored to the necessary finding of specific intent to cause harm. Moreover, Scott did not waive any valid exception to a verdict arguably in excess of that authorized by law by failing to object to the court's proposed verdict form or to the verdict itself immediately upon its return. Such an exception is timely if raised before the entry of judgment or in any timely post-judgment motion, including a motion for new trial.[21]

---

[17] 269 Ga. 262 (497 SE2d 786) (1998).

[18] (Emphasis supplied.) Id. at 265 (3).

[19] Id. at 263-264 (1).

[20] See, e.g., *Brundage v. Wilkins*, 121 Ga. App. 652, 654 (7) (175 SE2d 108) (1970) (holding: "defendant, as a claimant [via counterclaim], has the same burden as a plaintiff").

[21] See OCGA § 51-12-12 (b).

(b) It is undisputed that Battle failed to fulfill the requirements of the bright line rule requiring both a charge on specific intent to cause harm and a separate finding of specific intent to cause harm by the trier of fact in order to avoid the $250,000 cap on punitive damages. In framing its judgment, the trial court correctly reduced the award to the maximum authorized by OCGA § 51-12-5.1 (g).

*Judgments affirmed. Andrews, P. J., and Eldridge, J., concur.*

DECIDED APRIL 30, 2001 —
RECONSIDERATION DENIED MAY 16, 2001 — 

*King & Spalding, Paul J. Murphy, Rance L. Craft, Joseph R. Baker*, for appellant.
*Rowen & Klonoski, Sharon L. Rowen*, for appellee.