A01A2450. ST. PAUL FIRE & MARINE INSURANCE COMPANY
v. CLARK et al.
A01A2451. SECURITY LIFE INSURANCE COMPANY v. CLARK
et al.
(566 SE2d 2)

POPE, Presiding Judge.

This case has appeared before this Court three times and before the Supreme Court twice. Following these earlier appeals the trial court entered a modified final judgment in favor of the Clarks. We are now asked to determine whether the trial court acted consistently with the earlier appellate rulings.

Gordon and Clarice Clark brought suit against Security Life Insurance Company and Security's agent, John Fipps, in connection with a health insurance policy that the Clarks purchased from Security through Fipps. Fipps forged and falsified the Clarks' insurance application, and long after Security found out, Security rescinded the Clarks' policy. Security also sold a policy that did not comply with certain Georgia insurance laws and regulations. The full facts underlying the Clarks' claims are set forth in *Security I*.[1]

---

[9] *Davis v. Turpin*, 273 Ga. 244, 246 (3) (539 SE2d 129) (2000).
[1] *Security Life Ins. Co. v. Clark*, 229 Ga. App. 593 (494 SE2d 388) (1998).

Fipps failed to respond, and a judgment was entered by default against him on all claims, including fraud. At trial, after the close of the evidence, the court directed a verdict in favor of the Clarks on several issues, thereby establishing the following points: (1) Fipps falsified the application, forged the Clarks' signatures, and submitted the false application to Security; (2) Fipps was acting within the course and scope of his authority during the transaction; (3) Fipps was not the Clarks' agent at the time; (4) Security was estopped or precluded from rescinding the Clarks' insurance coverage; and (5) Security was liable as a matter of law on the claim for wrongful interference with the Clarks' property rights by wrongfully rescinding their insurance coverage.

Then, on a seven-page, special verdict form, the jury returned separate special verdicts in favor of the Clarks and against Security on two additional claims — fraud and violations of the Georgia Racketeer Influenced & Corrupt Organizations (RICO) Act. (The entire verdict form is attached as an appendix to this opinion.)[2] The jury awarded compensatory damages, without distinguishing among the three claims (fraud, wrongful interference, and RICO), in the amount of $4,073,000, together with attorney fees and expenses, and punitive damages. See Appendix. The trial court entered a judgment on the special verdict, which it attached and incorporated by reference, and noted that, "The Plaintiffs have elected to have judgment entered in their favor and against Defendants on their claims asserted under the Georgia [RICO] Act, OCGA § 16-14-6 (c), and therefore the compensatory damages awarded by the jury, after trebling as required by the law, are $12,219,000." The judgment also reflected the awards for attorney fees and expenses and punitive damages and included prejudgment interest, set-offs for related settlements, and certain ancillary orders related to the verdict. The total award amounted to $14,476,694.18.

Security appealed; Fipps did not. On the Clarks' motion, the trial court ordered Security to post a supersedeas bond in the amount of $16,220,000. St. Paul Fire & Marine Insurance Company issued a bond in that amount, and the bond was approved by the court.

Security's appeal wound its way through the appellate courts resulting in five separate opinions. In *Security I*, this Court reversed the judgment of the trial court. In *Security II*,[3] the Supreme Court affirmed in part and reversed in part the decision in *Security I*. In *Security III*,[4] this Court, attempting to apply the Supreme Court's

---

[2] Pursuant to the directed verdict on the wrongful interference claim, the court instructed the jury to answer "yes" to questions 1 and 2 on the special verdict form.

[3] *Clark v. Security Life Ins. Co.*, 270 Ga. 165 (509 SE2d 602) (1998).

[4] *Security Life Ins. Co. v. Clark*, 239 Ga. App. 690 (521 SE2d 434) (1999).

decision in *Security II*, affirmed the original judgment of the trial court. In *Security IV*,[5] the Supreme Court reversed the decision in *Security III*, clarified its opinion in *Security II*, and remanded the case to this Court "for action consistent both with this opinion and with our decision in *Security II*." Accordingly, in *Security V*,[6] this Court vacated *Security III*, reversed the judgment of the trial court, and remanded the case "for proceedings consistent with *Security IV*, *Security II*, and *Security I*."

All agree that after that judgment's appellate journey, the Clarks clearly lost their RICO judgment and the directed verdict holding that Security wrongfully interfered with their property rights by wrongfully rescinding their insurance coverage. On remand, the trial court, based on the original jury verdict for fraud, entered a modified judgment on that claim for the amount of the original jury verdict. Including attorney fees and certain other items, the modified judgment totaled over $6,000,000 plus interest. We must now decide whether the fraud claim survived entry of the original judgment and the several rulings of the Georgia Appellate Courts and whether the trial court acted in accord with the several appellate rulings.

There are two appeals now before us: Security appeals the modified judgment itself; and St. Paul appeals the trial court's ruling that its appellate bond also covers the fraud claim and judgment.

### Case No. A01A2451

In nine enumerations of error, many of which include subparts, Security essentially urges that (1) the Clarks waived their fraud claim or elected to abandon it; (2) the earlier appellate decisions foreclose any possible judgment for fraud; (3) the trial court was not authorized to enter a modified judgment for fraud; and (4) even if the fraud claim has not been eliminated, a new trial is required because the fraud verdict was prejudiced by presentation of the RICO and wrongful interference claims and several material errors made at trial. Security also challenges an award of costs on the prior appeal.

1. The Clarks are not precluded from obtaining a judgment on the fraud claim by the doctrine of election of remedies. Security claims that the Clarks expressly and voluntarily gave up their fraud claim when they, as stated by the trial court in the original final judgment, "elected to have judgment entered in their favor and against Defendants on their claims asserted under [RICO]. . . ." Security finds no relevance to the fact that the trial court expressly

---

[5] *Security Life Ins. Co. v. Clark*, 273 Ga. 44 (535 SE2d 234) (2000).
[6] *Security Life Ins. Co. v. Clark*, 249 Ga. App. 18 (547 SE2d 691) (2001).

incorporated the jury's verdict, including the verdict for fraud, into that same judgment.

A party may "pursue any number of inconsistent remedies prior to formulation and entry of judgment," and is only required to make an election prior to judgment if inconsistent verdicts are rendered. *Waller v. Scheer*, 175 Ga. App. 1, 5 (3) (332 SE2d 293) (1985); *UIV Corp. v. Oswald*, 139 Ga. App. 697, 699-700 (229 SE2d 512) (1976). See also OCGA § 9-2-4. There is no such requirement to make an election after consistent verdicts. And, the claims of fraud and RICO in this case are consistent since they both were based on the Clarks' choice to affirm the insurance contract and seek tort damages sustained by reason of the fraud. *Bacon v. Moody*, 117 Ga. 207, 209 (43 SE 482) (1903). See generally *Touche, Inc. v. Dearborn*, 161 Ga. App. 188, 190 (1) (291 SE2d 35) (1982). Further, the Georgia RICO Act expressly provides that "[t]he application of one civil remedy under this chapter shall not preclude the application of any other remedy, civil or criminal, under this chapter or any other provision of law." OCGA § 16-14-9. A plaintiff may pursue consistent remedies (and inconsistent remedies as provided above) against the same person until he or she obtains satisfaction. OCGA § 9-2-4.[7] Because the Clarks were unable to obtain satisfaction on their RICO claim, the fraud claim is still available in the sense that it is not precluded by the doctrine of election of remedies.[8]

Security's argument that the Clarks somehow abandoned their fraud claim during opening statement or closing argument is also without merit. Security claims that the Clarks only attempted to prove fraud in the context of the alleged RICO scheme. But, the requisite predicate acts in a RICO claim may also stand alone as separate causes of action. *Dee v. Sweet*, 218 Ga. App. 18, 20 (2) (a) (460 SE2d 110) (1995). Additionally, the special verdict form clearly presented three grounds of liability: fraud, RICO, and wrongful rescission. The court directed a verdict on wrongful rescission, and the jury chose both fraud and RICO; and Security has not challenged the form of the verdict on appeal.

2. The earlier appellate decisions in this case left intact a possible judgment for common law fraud.

(a) This Court's opinion in *Security I* decided only one issue possibly related to the verdict for fraud and, rightly or wrongly, held

---

[7] Of course, a plaintiff pursuing consistent remedies is not entitled to more than one satisfaction. *Belle Isle v. Moore*, 190 Ga. 881, 885 (3) (10 SE2d 923) (1940).

[8] See also *Curry v. Washington Nat. Ins. Co.*, 56 Ga. App. 809, 811 (2) (194 SE 825) (1937) ("If a suit be prosecuted on an alleged cause of action which in fact did not exist, there cannot be, as to such, an election of remedies.").

that any other enumerations of error related to the fraud verdict were moot.

We have reviewed the entire decision in *Security I*, and the only part of that decision possibly relevant to the verdict for fraud is found in Division 1 (d). There, this Court determined that Security could not be vicariously liable for Fipps' forgery of the insurance application. 229 Ga. App. at 602 (1) (d). In the final Division of the opinion, this Court held that the remaining enumerations of error, including those related to the fraud verdict, were rendered moot. Id. at 604 (4).

(b) The Supreme Court in *Security II* reversed this ruling, and in *Security IV* made clear that there was a possible ground to support a common law fraud verdict.

In *Security II*, the Supreme Court, among other things, reversed Division 1 (d) of *Security I* on the grounds that vicarious liability under RICO must be established pursuant to criminal liability standards. *Security II*, 270 Ga. at 167-168 (2). The court went on to hold that the Clarks had presented sufficient evidence of vicarious liability to submit the issue to the jury. Id. at 168 (2). As stated by the court: "There was some evidence from which the jury could conclude that Security Life recklessly tolerated the forgery by not investigating the charge of forgery and by pressing its rescission claim long after learning that Fipps forged the application." Id.

Although this passage in *Security II* and its context suggest that the Supreme Court considered the question of vicarious liability to be related to the RICO claim, see *Security IV*, 273 Ga. at 49 (Carley, J., dissenting in part), in *Security IV* the same court made clear that the vicarious liability issue addressed in *Security II* "was based entirely upon agent Fipps' independent act of forgery, which was not an element of the alleged RICO scheme." *Security IV*, 273 Ga. at 47. The court also explained that absent the RICO claims, for which proximate cause could not be established, the only remaining bad act was "one act of forgery." Id. at n. 22. The court found it easy to distinguish between the RICO claims and the forgery/vicarious liability claim: "It follows that there is no overlap between the RICO proximate cause issue and the vicarious liability issue." Id. at 48 (2). These findings are binding in all subsequent proceedings. OCGA § 9-11-60 (h).

As explained above, this one act of forgery had already been established by the default judgment against Fipps and by the unappealed entry of a directed verdict finding that Fipps falsified the application, forged the Clarks' signatures, and submitted the false application to Security. The Supreme Court simply added that there were sufficient facts to submit to the jury the question of Security's vicarious liability for Fipps' actions. These actions, and Security's failure to timely respond, constitute a basis for a finding of fraud. See, e.g., *Herringdine v. Nalley Equip. Leasing*, 238 Ga. App. 210, 217

(4) (517 SE2d 571) (1999). "Knowingly passing as genuine a forged instrument is conclusive of the intent to defraud." (Citation and punctuation omitted.) *Taylor v. State*, 128 Ga. App. 13 (195 SE2d 294) (1973). That the fraud and vicarious liability issues had been properly submitted to the jury became the law of the case. See *Security IV*, 273 Ga. at 46; *Shadix v. Carroll County*, 274 Ga. 560, 562 (1) (554 SE2d 465) (2001).

(c) The Supreme Court's decision reopened the possibility that the remaining enumerations of error not addressed in *Security I* regarding fraud were not moot.

In *Security IV* the majority neither stated that the remaining enumerations had to be addressed nor that they need not be addressed. Rather, the court reversed *Security III* and remanded the case to the Court of Appeals "for action consistent both with this opinion and . . . *Security II*." *Security IV*, 273 Ga. at 48 (3). The Supreme Court left to the Court of Appeals the question of which, if any, of the unaddressed enumerations of error from *Security I* needed to be addressed. See *Shadix*, 274 Ga. at 563 (1) (if portions of a decision of the Court of Appeals are inconsistent with a subsequent decision of the Supreme Court reviewing that decision, "it is for the Court of Appeals to determine on remand whether the portions of its earlier opinion that were not considered by [the Supreme] Court are consistent with [the Supreme] Court's ruling"). *Security V* did not revisit the decision that the remaining enumerations of error were moot, and, importantly, although it reversed the decision of the trial court, it remanded the case to that court "for proceedings consistent with *Security IV*, *Security II*, and *Security I*."

Because *Security IV* made clear that there was a possible basis for the verdict for fraud, any other enumerations of error related to that verdict were reopened and should have been addressed by the Court of Appeals. *Stevens v. Wakefield*, 163 Ga. App. 40 (292 SE2d 516) (1982). As Justice Carley stated in his partial dissent, "Because of this [c]ourt's previous reversal of the judgment of the Court of Appeals, the remaining enumerations are no longer moot." *Security IV*, 273 Ga. at 51 (Carley, J., dissenting in part). See also OCGA § 5-6-34 (d) (where a direct appeal is taken, "all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court").

(d) In other words, in its earlier appeal, Security was bound to raise as error all judgments, rulings, or orders, including the sufficiency of the evidence and any related rulings that might affect the fraud verdict. Indeed, Security took this step with regard to the trial court's decision to direct a verdict against Security on the claim for wrongful interference with property, despite the fact that the trial

court did not enter judgment on that claim. The same reasoning applied to the jury's entry of a verdict for fraud. And, in fact, Security enumerated errors in its earlier appeal that related to the verdict for fraud. Once the Supreme Court in *Security IV* made clear that there was a basis for the jury's verdict for fraud, Security could have moved for reconsideration of any remaining enumerations of error related to that verdict that were previously regarded as moot.

Security should have realized the importance of the unaddressed enumerations because *Security IV* reopened the possibility of a fraud judgment and Justice Carley made clear in his partial dissent that the remaining enumerations were pending. Indeed, Security knew that the trial court might order a retrial after remand; it moved for a retrial with that court upon remand. The unresolved enumerations would have been pertinent to that retrial. Accordingly, if Security believed *Security V*'s failure to address those enumerations was incorrect, it could have filed a motion for reconsideration or applied for certiorari with the Supreme Court of Georgia. See, e.g., *Roulain v. Martin*, 266 Ga. 353, 354 (1) (466 SE2d 837) (1996). But see *Todd v. Dekle*, 240 Ga. 842, 843 (242 SE2d 613) (1978). Security did not take either step.

(e) Although this raises a question about whether Security may have waived the issues represented by the remaining enumerations related to fraud, out of an abundance of caution and in an effort to bring resolution to this case, we will address the remaining enumerations relevant to the fraud verdict.[9]

(i) Security contends the trial court improperly directed a verdict that Fipps was not the Clarks' agent and argues that independent agents are dual agents.

> It is the rule in Georgia that "[i]ndependent insurance agents or brokers are generally considered the agent of the insured, not the insurer. [Cit.]" *European Bakers v. Holman*, 177 Ga. App. 172, 173-174 (2) (338 SE2d 702) (1985). This is, however, only a general rule, and sometimes the issue of agency is a jury question. Id. at 174.

*Universal Security Ins. Co. v. Lowery*, 195 Ga. App. 621, 622-623 (394 SE2d 416) (1990). In this case, Security admitted that Fipps was its approved licensed agent, not the Clarks', when he sold the policy and took the Clarks' application. Further, both the Clarks and Fipps tes-

---

[9] However, we will not address Security's enumeration regarding whether Georgia law recognizes a cause of action in tort for forgery by an independent agent. Security never raised this enumeration in its original appeal in *Security I*, and therefore it has been waived. *Carmichael Tile Co. v. McClelland*, 213 Ga. 656, 658 (2) (100 SE2d 902) (1957).

tified that Fipps was Security's agent, not the Clarks'. Thus, during the pertinent times at issue in this case, Security has admitted that Fipps was its agent, and therefore that fact has been established. We find no merit to this enumeration.

(ii) Security contends that the trial court allowed the jury to consider a measure of damages that had no basis in law or in fact.

Fraud in the performance of a contract authorizes the recovery of tort damages. *Phillips v. Leisure Automotive Corp.*, 223 Ga. App. 225 (477 SE2d 380) (1996); *Ben Farmer Realty Co. v. Woodard*, 212 Ga. App. 74-75 (441 SE2d 421) (1994). Damages are given as compensation for the injury inflicted. OCGA § 51-12-4. In this case, Security used the forged application in a deliberate attempt to deprive the Clarks of the value of their insurance policy. The injury inflicted was subjecting the Clarks to the entire risk of an indeterminate amount of medical expenses by fraudulently inducing them to cancel their existing, legitimate insurance that would have protected them from such risk, and to purchase Security's ultimately worthless insurance that exposed them to that risk.

Security claims that the trial court erred by allowing the former Georgia Insurance Commissioner to testify that the value of the Clarks' insurance coverage equaled the face value of the Clarks' coverage. However, Security offers virtually no support other than its own argument to challenge the trial court's decision to admit the expert opinion testimony regarding the value of the insurance coverage. Admission of expert testimony rests in the broad discretion of the court, and the court's decision will not be reversed absent an abuse of that discretion. *Reddin v. State*, 223 Ga. App. 148, 152 (5) (476 SE2d 882) (1996).

Because the law and facts support the ruling, there is no merit to this enumeration.

(iii) Security contends the trial court erred by allowing the Clarks to recover damages for the intangible value of the coverage and for their mental anguish and suffering. Mr. Clark testified that he suffered anguish because Security wrote his health care providers and informed them his health insurance had been rescinded. The superior court instructed the jury that damages were recoverable for mental suffering and emotional distress if they were a consequence of a wilful and intentional wrong, and the jury awarded Mr. and Mrs. Clark "general damages" of $31,500 each for their "mental suffering."

> " 'While mental suffering, unaccompanied by injury to purse or person, affords no basis for an action predicated upon wrongful acts merely negligent, yet such damages may be recovered in those cases where the plaintiff has suffered at the hands of the defendant a wanton, voluntary or inten-

tional wrong the natural result of which is the causation of mental suffering and wounded feelings.' [Cits.]"

*Tuggle v. Wilson*, 248 Ga. 335, 337 (2) (282 SE2d 110) (1981). We find no error when the court allowed testimony from the Clarks about their mental suffering.

In summary, none of the remaining enumerations of error related to fraud would require that the fraud verdict be reversed.

(f) Finally, elimination of the RICO claim by the appellate courts did not eliminate the possibility of a fraud verdict.[10] Security argues that the Clarks' fraud claim fails for the same reasons that the RICO claim failed, namely, lack of proximate cause and lack of injury. But the lack of evidence of proximate cause on the RICO claim, as found by the appellate courts, is irrelevant to the fraud claim based on Fipps' forgery. See *Crawford v. Williams*, 258 Ga. 806 (375 SE2d 223) (1989) (five elements of fraud). Security's proximate cause argument, and the basis for the appellate rulings on that argument, was that the Clarks could not show that insurance code violations and the other claimed illegalities in the insurance plan marketed to the Clarks, which formed the basis for an alleged mail and wire fraud scheme, caused their loss. See *Security I*, 229 Ga. App. at 599-603 (1) (b), (c). That proximate cause argument is irrelevant to the question of whether the Clarks relied on Fipps' forgery and, subsequently, on Security's reckless tolerance of the forgery. For the same reasons, the decision in *Security I*, at footnote 10, that Mrs. Clark could not have been damaged by the RICO scheme is irrelevant to her claim of damages for fraud.

In short, it has been established that the RICO judgment and the wrongful interference directed verdict have been eliminated but that there was sufficient evidence to send the common law fraud claim and the related issue of vicarious liability to the jury.

3. The appellate court rulings did not prohibit the trial court from entering a modified judgment. The appellate courts reversed and remanded for proceedings consistent with *Security I*, *Security II*, and *Security IV*. The reversal and remand did not mandate that the trial judge could only enter a judgment in favor of Security. The trial court merely had to divine what was consistent with the judgment of the appellate courts and act accordingly. "[T]he decision of the appellate court, and any direction awarded, shall be respected and in good faith carried into full effect by the court below." *Stafford Enterprises*

---

[10] We note that even the special concurrence in *Security V* considered that there were "potentially remaining claim[s]." *Security V*, 249 Ga. App. at 19 (Andrews, P. J., concurring specially).

*v. American Cyanamid Co.*, 164 Ga. App. 646, 650 (297 SE2d 307) (1982).

Neither did the Supreme Court's denial of the Clarks' motion to modify the judgment preclude the trial court from entering an amended order doing the same thing. During the second appeal to the Supreme Court, the Clarks requested that that court enter a modified judgment on the fraud claim. At that time, there were several remaining enumerations of error related to the fraud verdict that had not been addressed, and it would have been premature to enter a modified judgment. After the Court of Appeals failed to address those enumerations, the status of the case changed. It then became the trial court's duty to enter an order that reflected the appellate court rulings.

4. Neither the fraud claim nor the compensatory damages need be retried. Security asserts that the fraud verdict was tainted by the prejudicial effect of the improper evidence and argument related to the RICO and wrongful interference claims and by the jury charges on those claims. However, a new trial is not required because Security's liability for fraud and the compensatory damages have been established as a matter of law.

Following a reversal without specific direction by the appellate courts where only a question of law is involved, a new trial is not required. See *Stafford Enterprises*, 164 Ga. App. at 650. Further, "[t]he whole judgment will not be set aside because of error as to a part thereof, where it can be determined from the record how much is erroneous." (Citations and punctuation omitted.) *Scott v. Thompson*, 193 Ga. App. 487, 488 (2) (388 SE2d 371) (1989), aff'd, *Thompson v. Scott*, 260 Ga. 164 (393 SE2d 447) (1990).

It has already been established as a matter of law by the default judgment against Fipps and by the unappealed entry of a directed verdict that Fipps falsified the application, forged the Clarks' signatures, and submitted the false application to Security. It has also been established that Fipps was acting within the course and scope of his authority during the transaction, that Fipps was not the Clarks' agent at the time, and that the measure of damages was the full value of the policies. The Supreme Court added that there were sufficient facts to submit the issue of Security's vicarious liability to the jury for recklessly tolerating the forgery "long after learning that Fipps forged the application." *Security II*, 270 Ga. at 168 (2).

Certain admissions by Security during the trial are also helpful to our determination. A party's admission in open court is an admission in judicio and is therefore conclusive. *Lamb v. Decatur Fed. Sav. &c. Assn.*, 201 Ga. App. 583, 588 (411 SE2d 527) (1991). Security admitted in open court that the Clarks were "clearly injured or damaged as a result from [sic] Mr. Fipps' fraud." The President of Secur-

ity testified that Security should be held responsible for Fipps' fraud and misconduct and that the Clarks were injured. Both Security's vice-president and its actuarial expert witness admitted that the value of the promises represented by the policies was $4,100,000.

*Ga. Power Co. v. Busbin*, 242 Ga. 612 (250 SE2d 442) (1978), is not on point. In that case the jury entered a general verdict on four claims; however, only one of those was properly submitted to the jury. A new trial was warranted because the Supreme Court could not determine whether the verdict was entered upon a proper basis. In our case, the jury returned separate special verdicts on the fraud and RICO claims, and as shown above, there was a proper basis for the fraud award.

5. We now address the enumerations of error that are based on the trial court's entry of a modified judgment on the fraud verdict.

(a) Both the liability for and the amount of the award for punitive damages must be retried because the award was based on all three claims, not just fraud. Cf. *Scott v. Thompson*, 193 Ga. App. at 488 (2) (the whole judgment need not be set aside where it can be determined how much is erroneous).

With regard to litigation expenses under OCGA § 13-6-11, an award of fees and expenses must be affirmed if there is any evidence to support it. *A. P. S. S., Inc. v. Clary & Assoc.*, 178 Ga. App. 131, 132 (3) (342 SE2d 375) (1986). "[E]very intentional tort invokes a species of bad faith and entitles a person so wronged to recover the expenses of litigation including attorney fees." *Hudspeth v. A & H Constr.*, 230 Ga. App. 70, 72 (3) (a) (495 SE2d 322) (1997). Because the jury was authorized to find fraud, it was also authorized to find bad faith. Id. Therefore, liability for attorney fees need not be relitigated. See, e.g., *David C. Joel, Attorney at Law, P.C. v. Chastain*, 254 Ga. App. 592, 597-598 (4) (562 SE2d 746) (2002). Nevertheless, the Clarks were entitled only to attorney fees attributable to the claim on which they prevailed, i.e., the fraud claim. Id.; *Southern Cellular Telecom v. Banks*, 209 Ga. App. 401 (433 SE2d 606) (1993). See also *R. T. Patterson Funeral Home v. Head*, 215 Ga. App. 578, 585 (5) (451 SE2d 812) (1994) (physical precedent only). Accordingly, the amount of the award must be retried.

(b) For the purposes of retrial, we must address those enumerations likely to recur.

First, Security contends it was error to allow the Clarks to argue that any punitive damages assessed against Security would not be paid by it, but would be paid by numerous reinsurers who were not parties to the case. The Clarks admit that their argument was based on an attempt to link the reinsurers to the "insurance fraud scheme," i.e., the RICO scheme. That aspect of the case has been eliminated, and therefore that justification for the evidence may not be used on

retrial. Because we are unable to determine all other grounds for possibly introducing or prohibiting this evidence, we decline to now rule on the remainder of this question prospectively.

Second, it was improper to instruct the jury that it should consider the fact that the Clarks would have to pay tax on the punitive damages. Under the punitive damages statute, "the sole issue for a jury is the amount of money necessary to punish the defendant and deter future misconduct. Therefore, it is irrelevant who will be compensated by the award or how much the plaintiff will ultimately receive." *Ford v. Uniroyal Goodrich Tire Co.*, 267 Ga. 226, 230-232 (4), (5) (476 SE2d 565) (1996).

Third, after the jury returned its special interrogatory verdict form indicating that it did not find the specific intent required by OCGA § 51-12-5.1 (b) and (g), which was necessary in order to impose more than $250,000 in punitive damages, the trial court directed the jury to reconsider only this special interrogatory answer, finding it was "inconsistent" with the RICO and fraud liability found. Because the RICO claim is no longer viable, this ruling is unlikely to recur.

(c) The trial court erred in finding that the Clarks' liability for the costs of the earlier appeal was limited to only those portions of the appellate record (not including the transcript) that were actually referred to by Security in its appellate briefs and other appellate filings. OCGA § 5-6-5 provides: "If there is a judgment of reversal, the appellant shall be entitled to a judgment for the amount of the costs in the appellate court against the appellee as soon as the remittitur is returned to the court below." We find no authority for such a partial award.

## Case No. A01A2450

In the companion case, Security and St. Paul contend the trial court erred by refusing to declare the supersedeas bond void after the case was earlier remanded from the appellate court.

After the first judgment, the court, pursuant to OCGA § 5-6-46, ordered Security to post a supersedeas bond. St. Paul issued the bond in the amount of $16,220,000. The bond first provides that St. Paul will pay the Clarks the full amount of the bond. The condition is then explained that Security has appealed "from the Final Judgment filed on August 6, 1996." Finally, the operative language of the bond that explains when it shall become void is the following:

> NOW THEREFORE, if [Security] shall pay all costs, charges and damages which may be awarded against it on said appeal, and if [Security] shall pay the judgment or that part of the judgment which is affirmed, then this obligation shall become void to the extent of such payment; and if the judg-

ment is overturned, vacated, reversed, or modified in any way by any court exercising appellate jurisdiction over this matter, then this obligation shall become void to the extent the judgment is overturned, vacated, reversed, or modified; otherwise to be and remain in full force and effect.

Upon remand of the case after *Security V*, St. Paul moved to discharge its bond obligations and to declare the bond void. The trial court denied the motion and, in the modified final judgment, entered judgment against Security and St. Paul for the amount of the modified judgment.

St. Paul contends the trial court erred because the appellate courts reversed the original judgment thereby causing the bond obligation to become void pursuant to the simple terms of the agreement. We disagree.

"[W]here the contract is unambiguous and subject to only one construction, the liability of any surety (whether compensated or not) is not to be extended beyond the terms of the contract by implication or interpretation." *Houston Gen. Ins. Co. v. Brock Constr. Co.*, 241 Ga. 460, 464 (2) (246 SE2d 316) (1978), limited on other grounds, *Morrison Assurance Co. v. Preston Carroll Co.*, 254 Ga. 608, 609 (331 SE2d 520) (1985).[11]

As we have held above, the RICO judgment was reversed and the case remanded for proceedings consistent with *Security IV*, *Security II*, and *Security I*. Thus, the bond obligation was voided vis-à-vis the RICO judgment. But, the appellate courts did not reverse the verdict for fraud, which had been specifically incorporated by reference in the original judgment. Therefore, that part of the original judgment had not been eliminated by the appellate courts. The trial court entered the modified judgment by following the instructions and opinions of the appellate courts. Accordingly, the bond remained in full force and effect as to that portion of the original judgment. The trial court did not err.

*Judgment affirmed in Case No. A01A2450. Judgment affirmed in part and reversed in part in Case No. A01A2451. Blackburn, C. J., Johnson, P. J., Ruffin, Eldridge, Barnes, Ellington and Phipps, JJ., concur. Miller, J., concurs in judgment only and specially. Andrews, P. J., and Smith, P. J., concur in part and dissent in part. Mikell, J., disqualified.*

---

[11] St. Paul is a compensated surety here.

APPENDIX.

IN THE SUPERIOR COURT OF EARLY COUNTY
STATE OF GEORGIA

GORDON B. CLARK, et al.                    *

        Plaintiffs,                     *

v.                                         *   CIVIL ACTION NO. 95V-261

SECURITY LIFE INSURANCE                    *
COMPANY, et al.                            *
        Defendants.                 *
                           *

**VERDICT FORM**

**Part I**

1.    Do you find by a preponderance of the evidence that the defendant wrongfully rescinded the plaintiffs' insurance coverage?

Answer "Yes" or "No".

ANSWER: _X_ YES ___ NO

2.    Do you find by a preponderance of the evidence that the plaintiffs were injured or damaged as a result of such wrongful rescission?

Answer "Yes" or "No".

ANSWER: _X_ YES ___ NO

3.    Do you find by a preponderance of the evidence that the defendant committed a fraud upon the plaintiffs?

Answer "Yes" or "No".

ANSWER: _X_ YES ___ NO

4.    Do you find by a preponderance of the evidence that the plaintiffs were injured or damaged as a result of this fraud, if any?

Answer "Yes" or "No".

ANSWER: _X_ YES ___ NO

5.    Do you find by a preponderance of the evidence that the defendant

has acted in bad faith, has been stubbornly litigious, or has put the plaintiffs to unnecessary trouble and expense?

**Answer "Yes" or "No".**

ANSWER: X̶ YES ___ NO

6. Do you find by a preponderance of the evidence that the defendant has committed any predicate offense under the Georgia RICO Law? *yes.*

**Answer "Yes" or "No", and if your answer was "Yes" place an "X" in the blank in front of each predicate offense you believe has been established by a preponderance of the evidence.**

ANSWER: X̶ YES ___ NO

X̶ Theft by Taking

X̶ Theft by Deception

X̶ Forgery in the First Degree

X̶ False Statements

X̶ Perjury

X̶ Mail Fraud

X̶ Wire Fraud

7. Do you find by a preponderance of the evidence that the defendant has violated Section 4(a) of the RICO Law by acquiring or maintaining an interest in or control over personal property, including money, through a pattern of racketeering activity, either directly or indirectly?

**Answer "Yes" or "No".**

ANSWER: X̶ YES ___ NO

8. Do you find by a preponderance of the evidence that the defendant has violated Section 4(a) of the RICO Law by acquiring or maintaining an interest in or control over an enterprise through a pattern of racketeering activity, either

directly or indirectly?

Answer "Yes" or "No", and if your answer was "Yes" place an "X" in the blank in front of each enterprise in which you find an interest in or control over was acquired or maintained through a pattern of racketeering activity.

ANSWER: X YES ___ NO

X The Multiple Unit Security Trust II

X Insurers Administrative Corporation

9. Do you find by a preponderance of the evidence that the plaintiffs were injured or damaged by reason of such violation of Section 4(a) of the RICO Law?

Answer "Yes" or "No".

ANSWER: X YES ___ NO

10. Do you find by a preponderance of the evidence that the defendant has violated Section 4(b) of the RICO Law by conducting or participating in an enterprise through a pattern of racketeering activity, either directly or indirectly?

Answer "Yes" or "No", and if your answer was "Yes" place an "X" in the blank in front of each enterprise which you find the defendant conducted or participated in through a pattern of racketeering activity.

ANSWER: X YES ___ NO

X Security Life Insurance Company

X The Multiple Unit Security Trust II

X Insurers Administrative Corporation

11. Do you find by a preponderance of the evidence that the plaintiffs were injured or damaged by reason of such violation of Section 4(b) of the RICO Law?

Answer "Yes" or "No".

ANSWER: X YES ___ NO

12. Do you find by a preponderance of the evidence that the defendant has violated Section 4(c) of the RICO Law by conspiring with one or more persons or endeavoring to violate Sections 4(a) or 4(b) of the RICO Law?

**Answer "Yes" or "No", and if your answer was "Yes" place an "X" in the blank in front of each person which whom you believe the defendant conspired to violate Section 4(a) or 4(b) of the RICO Law.**

ANSWER: X YES ___ NO

X The Multiple Unit Security Trust II

X Security American Financial Enterprises, Inc.

X Congress Life Insurance Company

X American Accident Reinsurance Group III

X Allianz Life Insurance Company of North America

X American United Life Insurance Company

X Combined Insurance Company of America

X Crown Life Insurance Company

X The Equitable Life Assurance Society of the United States

X The Mercantile and General Reinsurance Company plc

X North American Reassurance Company

X Principal Mutual Life Insurance Company

X State Mutual Life Assurance Company of America

X Sun Life Assurance Company of Canada

X Transamerica Occidental Life Insurance Company

X UNUM Insurance Company of America

X Connecticut General Life Insurance Company

X Cologne Life Reinsurance Company

X Manufacturers Life Insurance Company

X Duncanson and Holt, Inc.

X Howard Johnson & Company

X Reinsurance Alternatives, Inc.

X Insurers Administrative Corporation

X Interlock, Inc.

X Insurance Compliance Services, Inc.

X TrustMark National Bank

X SentryCorp., Ltd.

X Stanley Hassan

13.   Do you find by a preponderance of the evidence that the plaintiffs were injured or damaged by reason of such violation of Section 4(c) of the RICO Law?

Answer "Yes" or "No".

ANSWER: X YES ___ NO

14.   What amount do you find by a preponderance of the evidence to be the full, just, and reasonable compensation for the plaintiffs' injuries caused by the wrongful conduct of the defendant?

Answer in dollars for each item.

(1)   Damages for Brady Clark's
Loss of Insurance Coverage:     $ 2,010,000.00

(2)   Damages for Clarice Clark's
Loss of Insurance Coverage:     $ 2,000,000.00

(3)   General Damages for Brady
Clark's Mental Suffering:       $ 31,500.00

(4)   General Damages for Clarice
Clark's Mental Suffering:       $ 31,500.00

(5)   Expenses of Litigation:         $ 792,902.08

32

TOTAL                    $ 4,865,902.08

15.    Do you find by clear and convincing evidence that the acts and omissions of the defendant show willful misconduct, malice, fraud, oppression, wantonness, or that entire want of care which raises a presumption of conscious indifference to consequences and the rights and safety of others so that punitive damages should be imposed to punish, penalize or deter the defendant?

Answer "Yes" or "No".

ANSWER: X YES ___ NO

SO SAY WE ALL this 31 day of July, 1996.

_Larry W. Grimsly Jr._
Foreperson

FILED IN OFFICE
CLERK OF SUPERIOR COURT
EARLY COUNTY, GEORGIA
July 31 1996 AT 3:35 P.M.

IN THE SUPERIOR COURT OF EARLY COUNTY
STATE OF GEORGIA

GORDON B. CLARK, et al.          *

          Plaintiffs,             *

v.                                *     CIVIL ACTION NO. 95V-261

SECURITY LIFE INSURANCE           *
COMPANY, et al.                   *

          Defendants.             *
                                  *

## VERDICT FORM

### Part II

16.   What amount of punitive damages do you find should be assessed

against the defendant?

**Answer in dollars.**

$ 1,500,000.00

17.   Were the acts and omissions of the defendant done with specific

intent to cause harm?

**Answer "Yes" or "No".**

ANSWER: X YES ___ NO

SO SAY WE ALL this 31 day of July, 1996.

Larry W. Shimeley Jr.
Foreperson

FILED IN OFFICE
CLERK OF SUPERIOR COURT
EARLY COUNTY, GEORGIA
July 31 19 96 AT 11:30 M.
Andie E. Thomas

MILLER, Judge, concurring specially. ·

I commend the court below and Presiding Judge Pope for their valiant efforts to discern and interpret the rulings of the various appellate decisions in this matter. It is unfortunate, indeed, that the long and tortured history of this case has required such efforts. The goal of the justice system should be to resolve cases promptly and to bring closure to the issues raised by the parties, regardless of the complexity of the facts before the court. After due consideration, however, I can concur in judgment only.

ANDREWS, Presiding Judge, concurring in part and dissenting in part.

### Case No. A01A2451

1. I fully concur in, and welcome, the majority's acknowledgment, although late in the tortured appellate history of this case, that "the Clarks clearly lost their [Racketeer Influenced & Corrupt Organizations Act ('RICO')] judgment and the directed verdict holding that Security wrongfully interfered with their property rights by wrongfully rescinding their insurance coverage."

I concur in Division 5 (a), which concludes that the issues of the amount of attorney fees and liability for and amount of punitive damages "must be retried because the award was based on all three claims, not just fraud." I must dissent to the portion of Division 5 (a) which concludes that liability for attorney fees was established and only the amount is subject to retrial because, as explained below, I believe Security Life is entitled to a new trial on the Clarks' remaining causes of action, including attorney fees. I concur in Division 5 (b) which concludes, among other things, that the Clarks' argument that payment of any punitive damages would be made by reinsurers, not Security, was linked to the "insurance fraud scheme, i.e., the RICO scheme" and that "that justification for the evidence may not be used on retrial." I concur in Division 5 (c) which found that the trial court erred in imposing only partial costs on the Clarks on the original appeal.

2. I must vigorously dissent, however, from the remaining Divisions of the majority opinion. In them, the majority somehow concludes, even in light of *Security Life Ins. Co. v. Clark*, 229 Ga. App. 593 (494 SE2d 388) (1998) ("*Security I*"); *Clark v. Security Life Ins. Co.*, 270 Ga. 165 (509 SE2d 602) (1998) ("*Security II*"); *Security Life Ins. Co. v. Clark*, 273 Ga. 44 (535 SE2d 234) (2000) ("*Security IV*"); and *Security Life Ins. Co. v. Clark*, 249 Ga. App. 18 (547 SE2d 691) (2001) ("*Security V*"), that the Clarks, both Mr. Clark, who did testify at trial, and Mrs. Clark, who did not testify or otherwise show dam-

ages incurred by her on *any* of her claims, were entitled, based upon the special interrogatory verdict form used in this case, to have a modified judgment for over $6,000,000 entered in their favor upon the remand of this case to the trial court.

(a) As noted by, but then ignored by, the majority, the judgment entered by the trial court following the trial stated that the Clarks "have elected to have judgment entered in their favor and against Defendants on their claims asserted under the Georgia [RICO] Act. . . ." Of the 15 special interrogatories used on the verdict form, upon which so much emphasis is placed by the majority, Numbers 6 through 13 specifically refer to the RICO claim. Following Number 13, in which the jury answered "yes" to the question of whether the Clarks were damaged by "reason of such violation of Section 4 (c) of the RICO Law," Number 14 asked, "[w]hat amount do you find . . . to be the full, just, and reasonable compensation for the plaintiffs' injuries caused by the wrongful conduct of the defendant?" In response, the jury answered the full face value of both Mr. and Mrs. Clarks' insurance policies, plus damages for mental suffering, and expenses of litigation.[12] Even in the event of a default and, thereby, resolution of the issue of *liability*, a plaintiff is still required "to present evidence establishing those damages. See *Agnew v. Great A & P Tea Co.*, 232 Ga. App. 708, 710 (1) (502 SE2d 735) (1998)." *Conseco Finance Servicing Corp. v. Hill*, 252 Ga. App. 774, 777 (2) (556 SE2d 468) (2001). Obviously, it follows that the Clarks were required to prove their actual damages, even in order to recover against Fipps.

Interrogatories 1 and 2 refer to the wrongful rescission claim, upon which, as acknowledged by the majority, the trial court improperly directed a verdict *as to liability* in favor of the Clarks. Only Interrogatories 3 and 4 relate to the Clarks' fraud claim. They ask if the jury found "that the defendant [singular and otherwise unidentified, even though the issue of damages was still unresolved as to Fipps] committed a fraud upon the plaintiffs"; and if plaintiffs "were injured or damaged as a result of this fraud, if any." It is upon the slender reed of Interrogatories 3 and 4 that the majority bases its conclusion that the Clarks, without more, are entitled to a judgment of the full face value of their medical and life insurance policies and other damages, although the majority acknowledges that the jury imposed compensatory damages in the amount of $4,073,000 "without distinguishing among the three claims (fraud, wrongful interference, and RICO)." This also would appear to be in direct conflict with

---

[12] Interrogatory 15 dealt with punitive damages, which the majority concludes must be retried because "the award was based on all three claims, not just fraud."

the majority's conclusion that it is unable to discern upon which claim punitive damages were imposed, and, therefore, a retrial is required.

The majority also makes the following revealing statements regarding the fraud claim, based on *Security I*, *Security II*, *Security IV*, and *Security V*:

> [T]he fraud claim is still *available* in the sense that it is not precluded by the doctrine of election of remedies.
>
> The Supreme Court . . . in *Security IV* made clear that there was a *possible ground* to support a common law fraud verdict.
>
> Finally, elimination of the RICO claim by the appellate courts did not eliminate the *possibility* of a fraud verdict.

(Emphasis supplied.)

I do not disagree that, upon a retrial on the remaining claims of wrongful rescission and fraud, there is a possibility of a fraud verdict. See *Security V*, supra at 19 (3) (Andrews, P. J., concurring specially). This, however, is light years removed from the majority's agreement with the trial court's modified judgment entered without a retrial and in the complete absence of evidence of legally recoverable actual damages. See *Conseco Finance Servicing Corp. v. Hill*, supra.

(b) In Division 2 (c) the majority concludes that *Security IV* "reopened the possibility that the remaining enumerations of error not addressed in *Security I regarding fraud* were not moot." (Emphasis supplied.) First, it is noted that the possibility of remaining enumerations *regarding fraud* is only alluded to by the dissent in *Security IV* and is, therefore, dispositive of nothing. The majority, citing *Roulain v. Martin*, 266 Ga. 353 (466 SE2d 837) (1996),[13] nonetheless concludes, based solely on Security's failure to file a motion for reconsideration or writ of certiorari following *Security V*, that there is a "question about whether Security may have waived the issues represented by the remaining enumerations related to fraud." It is unclear, however, since *Security V* reversed the judgment entered on the RICO verdict and required that a verdict in Security's favor be directed on that claim, why Security would file either a motion for reconsideration or a writ of certiorari in an appeal it appears to have won.[14] The majority, nonetheless, then addresses the "remaining enumerations relevant to the fraud verdict."

---

[13] That case appears to stand for the proposition that, once an appellate court has affirmed a conviction in a criminal case, the defendant is bound by that ruling in a subsequent civil habeas corpus proceeding.

[14] That Security did not file either a petition for certiorari or motion for reconsideration following *Security V* is in no way determinative of its right to argue these errors now or following retrial. *Todd v. Dekle*, 240 Ga. 842 (242 SE2d 613) (1978).

The actual enumerations of error in *Security I* were that the trial court erred:

(i) "in directing a verdict in favor of the Clarks on their claim for wrongful interference with property rights." The trial court did so err. *Security I*, supra at 603 (2), left untouched by *Security II*. *Security IV*, supra at 44.

(ii) "in denying Security's motion for directed verdict on the RICO claim." The trial court, as acknowledged in *Security I*, *Security II*, *Security IV*, and now by the majority, did so err.

(iii) "in directing a verdict that Fipps was not the Clarks' agent." The trial court did not err. *Security II*, supra at 167 (2), reversing *Security I*, supra at 602 (1) (d). Fipps is, therefore, for purposes of any retrial, the agent of Security.

(iv) "in permitting introduction of evidence of disputes between Security and other insureds." This ruling was mooted because that evidence dealt only with the insurance scheme to defraud, i.e., the RICO claim.

(v) "in its pre-trial sanctions orders and in permitting Plaintiffs to argue pre-trial orders at trial." The original judgment in *Security I* provided that some of these pre-trial orders were moot and the amounts assessed on others were "subsumed in the amount awarded in this final judgment as the Plaintiffs' overall expenses of investigation and litigation, including attorney's fees." This matter is moot because a directed verdict is to be entered in Security's favor on the RICO claim and because Division 5 (a) of the majority requires retrial of punitive damages and attorney fees. These items now relate, of course, only to any possible verdict in the Clarks' favor on the retrial of their claims for wrongful rescission and fraud.

(vi) "in giving the jury contradictory instructions." The instructions at issue dealt with Georgia Insurance Commission provisions governing insurance and related, therefore, only to the RICO claim.

(vii) "committed numerous errors related to damages." Because, pursuant to *Security I*, affirmed by *Security II* and *Security IV*, the Clarks were entitled to no damages on their RICO claim, the only claim upon which the judgment appealed from was entered, that issue is moot as to the RICO claim. To the extent it can be argued that Security should have divined that, upon remand from its successful appeal, the trial court would impose a judgment on the possible fraud claim represented by two interrogatories on the verdict form and Security should have anticipated this and prospectively argued the illegality of any such damages, Security may argue this now, or following retrial. One does not waive "any valid exception to a verdict arguably in excess of that authorized by law by failing to object to the court's proposed verdict form or to the verdict itself

immediately upon its return." *Scott v. Battle*, 249 Ga. App. 618, 622 (4) (a) (548 SE2d 124) (2001).

The majority finds that, regarding the possible fraud verdict, Security's objection to the testimony of former Insurance Commissioner Ryles was not valid. The transcript reflects that Ryles testified extensively regarding numerous failures by Security to comply with insurance regulations, the heart and soul of the Clarks' RICO claim which was also premised on fraud.[15] Ryles' testimony represents over 260 pages of transcript. As held in *Security I*, supra at 599 (1) (b) and affirmed by *Security II*, supra at 168 (3), violations of the insurance code cannot serve as predicate acts for RICO.

The only statement by Ryles, made in the context of his testimony concerning these regulatory violations, regarding the Clarks' damages was that the maximum value of the coverage promised by the Insight Answer plan to the Clarks was the limits of their lifetime coverage. I believe Security's objection to this evidence should have been sustained and the allowance of the evidence was a clear abuse of discretion. It is unclear how, in a retrial, such an opinion from an expert regarding regulation of insurance would be probative of any damages suffered by the Clarks as a result of fraud alone or wrongful interference with property rights.

Regarding proof of damages, I note again that Mrs. Clark did not testify at the trial regarding any damages and no damages were otherwise proven regarding her. Mr. Clark testified that he had incurred medical expenses of $62,330.41 which Security had not paid.

Therefore, I believe that Security had a valid objection to the evidence regarding damages to the extent that evidence might or might not be relevant upon the retrial of the wrongful interference and fraud claims alone.

(viii) "committed numerous errors relating to punitive damages." The trial court did so err, as stated by the majority in Division 5 (a).

(c) Although the majority has striven mightily to indicate that the only issues remaining on remand are issues of "law," thereby requiring no new trial, a new trial is required because the Clarks must prove all the elements of fraud, including that their actual damages flowed from such fraud, even as to Fipps. See, e.g., *Bacote v. Wyckoff*, 251 Ga. 862, 865 (1) (310 SE2d 520) (1984).

Further, the authority relied upon by the majority recognizes that, even prior to both the Civil Practice Act and the Appellate Practice Act, a new trial was required when a judgment is reversed without specific direction to do otherwise.

---

[15] Both mail and wire fraud, alleged as predicate acts, require proof of a "scheme [or artifice] to defraud." *Security I*, supra at 598.

As a general rule, where the writ of error is founded upon a trial below in which both law and fact were involved, and where the complaint is that the plaintiff in error [here Security] lost his case when he was entitled to gain it, and where this court is of opinion that he was entitled to gain it, and where, for that reason, the judgment of the court below is reversed, a new trial follows unless this court, by way of direction, dictates something else.

*Schley v. Schofield & Son*, 61 Ga. 528, 530 (1878), cited in *Stafford Enterprises v. American Cyanamid Co.*, 164 Ga. App. 646, 649 (297 SE2d 307) (1982). See also *Worley v. Travelers Indem. Co.*, 121 Ga. App. 179, 181 (173 SE2d 248) (1970).

In *Clark v. Jefferson Pilot Life Ins. Co.*, 209 Ga. App. 93, 94 (2) (432 SE2d 815) (1993), even when a verdict form using special interrogatories was used during the initial trial, this Court concluded that, upon the reversal of that judgment, a new trial was required.

So it is here. Upon receipt of the remittitur from this Court in *Security V*, the trial court was authorized to conduct a new trial, nothing more, nothing less.

## Case No. A01A2450

3. Since a new trial is required upon remand, St. Paul Fire & Marine Insurance Company was entitled to have the supersedeas bond posted on behalf of Security declared void because, as stated in that bond, "if the judgment is overturned, vacated, reversed in any way by any court exercising appellate jurisdiction over this matter, then this obligation shall become void to the extent the judgment is overturned, vacated, reversed, or modified. . . ."

Even the majority must concede that, at a minimum, the judgment has been modified, as reflected in the modified judgment which is the subject of these two appeals.

SMITH, Presiding Judge, concurring in part and dissenting in part.

While I do not agree with all that is said in Presiding Judge Andrews's opinion, I do agree that in Case No. A01A2451, Security Life Insurance Company is entitled to a new trial on the Clarks' remaining causes of action, including attorney fees. As to Case No. A01A2450, I further agree that St. Paul Fire & Marine Insurance Company was entitled to have the supersedeas bond declared void.

I therefore respectfully concur in part and dissent in part.

DECIDED APRIL 12, 2002 —

*Porter, Orrison & Doster, J. Alexander Porter, King & Spalding, Byron Attridge, Benjamin F. Easterlin IV, S. Stewart Haskins II*, for appellant (case no. A01A2450).

*Sutherland, Asbill & Brennan, William D. Barwick, Teresa W. Roseborough, Carla W. McMillian*, for appellant (case no. A01A2451).

*Gregory, Christy & Maniklal, Hardy Gregory, Jr., Preyesh K. Maniklal, William S. Stone, Kevin R. Dean*, for appellees.

*Bovis, Kyle & Burch, James E. Singer, Love, Willingham, Peters, Gilleland & Monyak, Allen S. Willingham, Michael T. Carithers, Scott M. Patterson, Mabry & McClelland, Walter B. McClelland*, amici curiae.