A04A0170. REHEIS et al. v. BAXLEY CREOSOTING & OSMOSE WOOD PRESERVING COMPANY et al.
(601 SE2d 781)

MIKELL, Judge.

OCGA § 12-8-96.1 (a) of the Georgia Hazardous Site Response Act ("HSRA") permits the state to recover the reasonable costs incurred in cleaning up hazardous waste sites, as well as attorney fees and punitive damages. In this case of first impression, we hold that defendants sued under Code section 12-8-96.1 (a) have no right to a jury trial on the issue of whether the actual costs were reasonable, but they may demand a jury trial on the issue of punitive damages. We further conclude that cost recovery determinations made by the Environmental Protection Division ("EPD") of the Department of Natural Resources are entitled to deference. In addition, we affirm the grant of summary judgment to defendant Lawton M. Morris. Finally, for reasons that will be clarified below, we remand for the trial court to consider certain issues raised in the motion for summary judgment filed by EPD director Harold F. Reheis (the "Director"). The relevant facts follow.

On April 27, 1995, the EPD entered into a consent order with Baxley Creosoting & Osmose Wood Preserving Company ("Baxley"), whereby Baxley agreed to remove hazardous waste that had leaked from five steel tanks located on its Appling County property. Morris

executed the order in his capacity as Baxley's president. The order imposed penalties of $5,000 per day for noncompliance. However, the order also provided that if Baxley was unwilling or unable to comply with the conditions specified therein, the company could notify the Director, and no additional penalties would accrue from the date of notification.

On August 16, 1995, the Director notified Baxley that it had violated the order by discharging 35,000 gallons of waste water on June 30, 1995. The Director indicated that if Baxley committed any additional violations of the order, the EPD would take necessary corrective action to clean up the site and would pursue an action under OCGA § 12-8-96.1 (a) to recoup the costs and recover punitive damages. Shortly thereafter, Baxley notified the Director of its inability to comply with the order, and the Director completed all corrective action at the site utilizing monies from the hazardous waste trust fund, as provided in OCGA § 12-8-96 (b).

On June 16, 2000, the Director filed suit against Baxley and Morris, jointly, severally, and individually, seeking to recover cleanup costs of $2.24 million, punitive damages of $6.725 million, and attorney fees. The Director moved for summary judgment, asserting that (a) the site was a "facility" as defined in OCGA § 12-8-92 (3); (b) there was a "release" of hazardous constituents at the site within the meaning of OCGA § 12-8-92 (11); (c) both Baxley and Morris were responsible parties under OCGA § 12-8-96.1 (a); and (d) the state incurred costs associated with cleaning up the environmental hazards at the site due to the defendants' failure to comply with the consent order. In opposing summary judgment, Baxley and Morris contended, inter alia, that they were entitled to a jury trial on the issue of the reasonableness of the costs incurred by the state. In addition, Morris moved for summary judgment, arguing that he could not be held personally liable because he signed the consent order in his representative capacity.

The trial court denied the Director's motion and granted Morris's motion, concluding that the legislature intended to provide entities sued under OCGA § 12-8-96.1 (a) with the right to trial by a jury and that Morris could not be held personally liable. However, the court did not rule on issues (a), (b), and (d) of the Director's motion. The Director appeals.

1. The Director first assigns error to the trial court's holding that Morris could not be held individually liable for the cleanup costs. We agree with the trial court.

The HSRA imposes certain procedural due process requirements with which the Director must comply in order to recover costs and punitive damages thereunder. Pertinently, OCGA § 12-8-96 (a) provides:

Whenever the director has reason to believe that there is or has been a release of hazardous wastes . . . into the environment, . . . the director shall make a reasonable effort to identify each person who has contributed or who is contributing to such a release. The director shall then notify each such person in writing of the opportunity to perform voluntarily corrective action in accordance with an administrative consent order entered into with the director within such period of time as may be specified by the director in written correspondence to the person.

Section 12-8-96.1 (a), in turn, states in relevant part:

Each and every person who contributed to a release of a hazardous waste . . . shall be jointly, severally, and strictly liable to the State of Georgia for the reasonable costs of activities associated with the cleanup of environmental hazards, including legal expenses incurred by the state pursuant to subsection (a) of Code Section 12-8-96, *as a result of the failure of such person to comply with an order issued by the director.* . . . The person may, in addition, be liable for punitive damages in an amount at least equal to the costs incurred by the state and not more than three times the costs incurred by the state for activities associated with the cleanup of environmental hazards.[1]

It is clear from this statutory scheme that an order issued by the director providing each person the opportunity to perform corrective action is a prerequisite to the imposition of individual liability. The record reflects, however, that Morris was not a party to the order that formed the basis of the action in the case at bar. The Director filed suit based on alleged violations of the terms of Consent Order EPD-HW-HSR-009. The order identifies Baxley as "Respondent." Morris, and three other individuals surnamed Morris, are identified as Respondent's corporate officers. The only two parties on the signature page are the EPD and Baxley. The Director signed on behalf of the EPD, and Morris signed on behalf of Baxley as its president. Based on the

---

[1] (Emphasis supplied.) This Code section further specifies two conditions under which a person is liable notwithstanding the absence of an order:

if the director is unable to identify such person prior to the commencement of clean-up action after making a reasonable effort to do so pursuant to such Code section, or if such person contributed to a release which resulted in an emergency action by the director and issuance of such an order would cause a delay in corrective action that could endanger human health and the environment.

statutory scheme, Morris cannot be held personally liable for violating an order to which he was not made a party. Nor has the Director alleged that Morris can be held individually liable as the "alter ego" of Baxley. As the trial court held, absent piercing the corporate veil, Morris is shielded from liability.[2]

The Director urges that we construe the procedural due process requirements liberally because the HSRA is remedial in nature. The Director cites the principle that remedial statutes "are to receive an equitable interpretation, by which the letter of the Act is sometimes restrained and sometimes enlarged, so as more effectually to meet the beneficial end in view, and prevent a failure of the remedy. They are to be construed liberally and *ultra*, but not *contra* to the strict lette⹁."[3] However, as noted in the decision cited by the Director, "uncertainties or ambiguities in remedial statutes should be resolved in favor of a liberal interpretation. But there is no uncertainty or ambiguity here."[4] The same is true in this case. Construed together, OCGA §§ 12-8-96 (a) and 12-8-96.1 (a) plainly mandate, with certain exceptions inapplicable here, that unless a person has failed to comply with an administrative consent order entered into with the Director after notice and an opportunity to perform corrective action voluntarily, such person cannot be held liable for costs associated with the cleanup of environmental hazards. "Where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden."[5]

Moreover, it is axiomatic that "when a statute imposes a fine or penalty, strict construction is required in favor of the person penalized."[6] OCGA § 12-8-96.1 (a) imposes punitive damages in an amount from one to three times the cleanup costs. A strict construction of this Code section does not permit the Director to negotiate consent corrective action orders with corporate officers and ignore the statutorily-mandated due process requirements for subjecting those officers to personal liability for the discharge of hazardous waste.

Further, we reject the Director's reliance upon authority decided under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 USC §§ 9601-9675.

---

[2] See generally *Nat Katz & Assoc. v. Barber*, 255 Ga. App. 207, 208-209 (1) (564 SE2d 802) (2002); *Soerries v. Dancause*, 248 Ga. App. 374, 375 (546 SE2d 356) (2001). Compare *Jennings v. Smith*, 226 Ga. App. 765, 766 (1) (487 SE2d 362) (1997) (corporate officer who participates in the commission of a tort by the corporation is personally liable).

[3] (Footnote omitted; emphasis in original.) *Ins. Dept. of the State of Ga. v. St. Paul Fire & Cas. Ins. Co.*, 253 Ga. App. 551, 554 (1) (559 SE2d 754) (2002), citing *Henderson v. Alexander*, 2 Ga. 81, 85 (1847).

[4] Id.

[5] (Citation omitted.) *Six Flags Over Ga. II v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003).

[6] *State Ethics Commr. v. Moore*, 214 Ga. App. 236, 237 (447 SE2d 687) (1994).

While there are certain similarities between CERCLA and the HSRA, CERCLA does not afford the same procedural due process protections as the HSRA.[7] It follows that cases cited under CERCLA are inapplicable.

Finally, the Director argues that Morris can be held personally liable for a violation of the consent order because he had "actual notice" thereof, citing *The Bootery v. Cumberland Creek Properties.*[8] In that case, our Supreme Court held that a lender who was not party to a consent judgment that incorporated a settlement agreement concerning litigation over golf course property and who was not in privity with the contemnor could not be held in contempt for violating the judgment.[9] The outcome turned on the fact that the lender did not have actual notice of the judgment, by personal service or otherwise.[10] In this case, the Director argues that because Morris negotiated the order on Baxley's behalf, he had "actual notice" of its terms within the meaning of *The Bootery*. We disagree. As outlined above, the HSRA requires the Director to adhere to specific procedural guidelines prior to instituting suit to recover remediation costs and punitive damages. This the Director did not do.

Accordingly, Morris did not have "actual notice" that he could be subjected to personal liability for remediation costs within the meaning of the HSRA and the laws governing the liability of corporate officers. The trial court correctly granted his motion for summary judgment.

2. The Director next argues that the trial court erred in ruling that defendants sued under OCGA § 12-8-96.1 (a) have the right to a jury trial. As noted above, the statute permits recovery for two categories of damages: (a) "the reasonable costs of activities associated with the cleanup of environmental hazards, including legal expenses," and (b) "punitive damages in an amount at least equal to the costs incurred by the state and not more than three times the costs

---

[7] 42 USC § 9607 (a) (1) imposes liability upon the "owner and operator" of a polluting vessel or facility for the removal or remedial costs incurred by the United States. See, e.g., *United States v. Amtreco, Inc.*, 809 FSupp. 959, 966 (M.D. Ga. 1992) (sole stockholder who actively participates in corporate management is personally liable under CERCLA as an owner and operator). Accord *Browning-Ferris Indus. of Illinois v. Ter Maat*, 195 F3d 953, 956 (7th Cir. 1999) (if corporate president and principal shareholder supervised daily operations of polluting landfill, then he could be held jointly liable with corporate defendants); *New York v. Shore Realty Corp.*, 759 F2d 1032, 1052 (2d Cir. 1985). OCGA § 12-8-92 (9) (A) includes "[t]he owner or operator of a facility" within the definition of " '[p]erson who has contributed . . . to a release' " of hazardous wastes but, as discussed supra, Code sections 12-8-96 and 12-8-96.1 require that such person be given notice an opportunity to perform corrective action before he or she can be sued.

[8] 271 Ga. 271 (517 SE2d 68) (1999).

[9] Id. at 272 (2).

[10] Id.

incurred by the state for activities associated with the cleanup of environmental hazards." Id. The trial court determined that both the reasonableness of the cleanup costs and the amount of punitive damages were issues for a jury to decide. We agree with the trial court insofar as punitive damages are concerned but disagree as to the reasonableness of the remediation costs.

Our analysis begins with the distinction between the State Constitution and the Federal Constitution concerning the right to trial by jury. "The right to a jury trial under our State Constitution is not as broad as that afforded under the Federal Constitution."[11]

> Our State Constitution does not track the broad language of the Seventh Amendment to the Federal Constitution pre-serving the right to jury trial "[i]n Suits at common law. . . ." Instead, Art. I, Sec. I, Par. XI (a) provides that "[t]he right to trial by jury shall remain inviolate." . . . The provision of our State Constitution regarding the right to jury trial means that it shall not be taken away, *as it existed in 1798*, when the [first] instrument was adopted, *and not that there must be a jury in all cases.* New forums may be erected, and *new remedies provided*, accommodated to the ever shifting state of society.[12]

Therefore, our Supreme Court has concluded that "[t]here is no state constitutional right to a jury trial with respect to *proceedings of statutory origin unknown at the time the Georgia Constitution was*

---

[11] *Swails v. State of Ga.*, 263 Ga. 276, 278 (3) (431 SE2d 101) (1993).

[12] (Punctuation omitted; emphasis in original.) Id., citing *Flint River Steamboat Co. v. Foster*, 5 Ga. 194, 207-208 (1848). The quoted words are those of Justice Lumpkin, a scholar who stands first in the pantheon of our state's great jurists. Despite his pre-eminence, Lumpkin's use of the 1798 date is misleading. Our Supreme Court has consistently held that "the right to trial by jury exists only where the right existed prior to the adoption of the *first* Georgia Constitution." (Citations omitted; emphasis supplied.) *Hill v. Levenson*, 259 Ga. 395 (1) (383 SE2d 110) (1989) (Marshall, C. J.). Georgia's first organic document was not that of 1798 but was a temporary measure, effective May 1, 1776, called the "Rules and Regulations." Kenneth Coleman, Colonial Georgia: A History 276 (1976). The phrase declaring the right to trial by jury to be inviolate first appeared in the Constitution of 1777, adopted February 5, 1777. Id. at 277-279. See *Tift v. Griffin*, 5 Ga. 185, 189 (1848) (Nisbet, J.) ("Our Constitutions of 1777, of 1789, of 1798, adopt and affirm the right [to trial by jury]."). See also Cicero Garner, Jr., Georgia's Constitution of 1777, Ga. B. J. 485, 496 (1962). Lumpkin may have used the 1798 date because the constitution of that year was still in effect when he wrote *Flint River Steamboat Co.* or because the 1798 document added the qualification "as heretofore used in this State," thus limiting the right to its pre-1798 definition. Robert N. Katz, The History of the Georgia Bill of Rights, 3 Ga. St. U. L. Rev. 83, 122 (1987).

One commentator seems to be in error when she argues that "Georgia had no bill of rights until 1861." Dorothy T. Beasley, The Georgia Bill of Rights: Dead or Alive, 34 Emory L.J. 341, 364 (IV) (A) (1985). See Coleman, supra at 278 ("Scattered throughout the constitution [of 1777] were several paragraphs which collectively made up a bill of rights.").

*adopted.* [Cit.]"[13] The HSRA was enacted in 1992.[14] The statutory procedure for the recovery of environmental cleanup costs was unknown in 1798. It follows that Baxley is not entitled to a jury trial on the issue of the reasonableness of the remediation costs sought by the Director. Our conclusion is buttressed by *Hatco Corp. v. W.R. Grace & Co.*,[15] in which the Third Circuit Court of Appeals held that the remedies under 42 USC §§ 9607 and 9613 (f) of CERCLA were akin to restitution, so that the parties did not have the right to a jury trial.[16]

But *Hatco Corp.* did not concern the recovery of punitive damages, which serve a wholly different purpose, both under CERCLA[17] and Georgia law. "In Georgia, the purpose of punitive damages is to deter the repetition of reprehensible conduct by the defendant, and they are not awarded as compensation to a plaintiff."[18] Similarly, in construing CERCLA, the Eleventh Circuit noted: "By definition, punitive damages do not compensate a plaintiff, nor do they remedy a wrong. Punitive damages are designed to punish a wrongdoer and deter grossly improper conduct."[19]

Historically, under Georgia common law, the measure of punitive damages to be awarded, if any, is determined according to the enlightened conscience of an impartial jury.[20] Although the HSRA sets the range of punitive damages that may be awarded, it is for a jury to determine whether, if any, such damages within that range should be assessed against the polluter. Similarly, we note that, in the Eleventh Circuit case cited above, the issue of punitive damages under CERCLA was tried before a jury by the district court.[21]

---

[13] (Punctuation omitted; emphasis in original.) *Swails*, supra, citing *Benton v. Ga. Marble Co.*, 258 Ga. 58, 66 (4) (365 SE2d 413) (1988). See also *Kelly v. Ga. Dept. of Human Resources*, 269 Ga. 384 (1) (498 SE2d 741) (1998).

[14] Ga. L. 1992, p. 2234, § 5.

[15] 59 F3d 400 (3d Cir. 1995).

[16] Id. at 412, 414. See also *United States v. Northeastern Pharmaceutical & Chemical Co.* ("*NEPACCO*"), 810 F2d 726, 749 (8th Cir. 1986), cert. denied, *NEPACCO v. United States*, 484 U. S. 848 (108 SC 146, 98 LE2d 102) (1987).

[17] The CERCLA provision regarding punitive damages states that "[i]f any person who is liable for a release . . . of a hazardous substance fails without sufficient cause to properly provide removal or remedial action upon order of the President . . . , such person may be liable . . . for punitive damages in an amount at least equal to, and not more than three times, the amount of any costs incurred." 42 USC § 9607 (c) (3).

[18] (Footnotes omitted.) *Scott v. Battle*, 249 Ga. App. 618, 621 (3) (548 SE2d 124) (2001), citing *Hosp. Auth. of Gwinnett County v. Jones*, 261 Ga. 613, 614 (1) (409 SE2d 501) (1991); OCGA § 51-12-5.1 (c). See *Etheridge v. Kay*, 153 Ga. App. 399, 400-401 (265 SE2d 332) (1980).

[19] (Punctuation and footnote omitted.) *United States v. Parsons*, 936 F2d 526, 528 (11th Cir. 1991).

[20] *Selman v. Barnett*, 4 Ga. App. 375, 377 (61 SE 501) (1908).

[21] *United States v. Parsons*, 738 FSupp. 1436, 1437 (N.D. Ga. 1990), vacated and remanded on other grounds, 936 F2d 526 (11th Cir. 1991).

Therefore, we hold that in a suit under OCGA § 12-8-96.1 (a), the trial court must follow a bifurcated procedure in the event that the Director seeks an award of punitive damages.

3. Finally, we turn to the Director's contention that the trial court erred in denying its motion for summary judgment on the issue of the amount of the cleanup costs. As the trial court determined that Baxley was entitled to a jury trial on this issue, the court did not consider the parties' evidentiary submissions, and we remand for this purpose. However, we remind the court that decisions of a state agency are accorded a high level of deference.

> [T]he focus of the courts in reviewing administrative decisions should be to evaluate the extent of discretion delegated to that agency and to see that the agency acts within the limits of its discretion in order to protect individuals against the unnecessary and uncontrolled use of that power. . . . Therefore, the only review authorized is that inherent in the power of the judiciary: [w]hether the agency acted beyond the discretionary powers conferred upon it, abused its discretion, or acted arbitrarily or capriciously with regard to an individual's constitutional rights.[22]

Within the HSRA, the General Assembly has vested the Director with the authority to take a variety of actions: to determine whether property requires corrective action; to ensure that corrective action is taken; to administer the hazardous waste trust fund and expend the monies contained therein; to appoint a hazardous waste trust fund advisory committee and to consult with that committee in developing rules and regulations regarding, inter alia, criteria for uses of the fund.[23] Therefore, the standard of review is limited as stated above, and Baxley bears the burden of proving that the costs expended by the state in cleaning up the environmental hazards were unreasonable.

We derive support for this conclusion in federal decisions interpreting CERCLA. "Because determining the appropriate removal and remedial action involves specialized knowledge and expertise, the choice of a particular cleanup method is a matter within the discretion of the EPA. The applicable standard of review is whether the agency's choice is arbitrary and capricious."[24]

---

[22] *Bentley v. Chastain*, 242 Ga. 348, 352 (1) (249 SE2d 38) (1978).

[23] OCGA § 12-8-94 (a).

[24] *United States v. NEPACCO*, supra at 748 (VII). Accord *Wash. State Dept. of Transp. v. Wash. Natural Gas Co.*, 59 F3d 793, 800 (9th Cir. 1995); *United States v. Hardage*, 982 F2d 1436, 1442 (10th Cir. 1992).

In sum, this case is remanded for the trial court to determine whether, in light of the foregoing standard, the Director is entitled to summary judgment as to recovery of the cleanup costs, plus legal expenses. However, the issue of punitive damages must be tried to a jury.

*Judgment affirmed in part and reversed in part and case remanded. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JULY 1, 2004.

*Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, John E. Hennelly, Timothy J. Ritzka, Assistant Attorneys General, Goodman, McGuffey, Lindsey & Johnson, W. Davis Hewitt*, for appellants.

*Reinhardt, Whitley, Wilmot & Summerlin, John R. Reinhardt, John T. Croley, Jr., Keith M. Morris*, for appellees.