A08A0684. WALKER COUNTY v. TRI-STATE CREMATORY et al.
(664 SE2d 788)

BERNES, Judge.

In the second appearance of this case before us, Walker County appeals the trial court's dismissal of its second amended complaint for failure to state a claim upon which relief can be granted. Walker County contends that the trial court erred in dismissing its contribution claim brought pursuant to the Georgia Hazardous Site Response Act ("HSRA"), OCGA § 12-8-90 et seq., against the owners and operators of the Tri-State Crematory and funeral homes and funeral directors that sent human remains there. For the reasons discussed below, we conclude that the "corrective action" referred to in the contribution provision of the HSRA, OCGA § 12-8-96.1 (e), does not contemplate environmental clean up activities conducted unilaterally by a party without the involvement of the Director of the Environmental Protection Division of the Georgia Department of Natural Resources ("EPD"). We therefore affirm.

> A motion to dismiss may be granted only where a complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of his or her claim. We review the trial court's ruling on a motion to dismiss under the de novo standard of review.

(Punctuation and footnote omitted.) *Tate v. Kia Autosport of Stone Mountain*, 273 Ga. App. 627, 627-628 (616 SE2d 112) (2005). The dismissal of a complaint will be affirmed if right for any reason. *Gillis v. American Gen. Life &c. Ins. Co.*, 222 Ga. App. 891, 892 (476 SE2d 648) (1996).

The record reflects that after discovering and removing uncremated and decayed human bodies from the property of the Tri-State Crematory, Walker County brought suit against the owners and operators of the crematorium and against multiple funeral homes and funeral directors that sent bodies there, seeking to recover the costs the county incurred to recover, move, store, and identify the remains. In its first amended complaint, Walker County asserted claims for negligence and public nuisance. The defendants moved to dismiss the first amended complaint for several reasons, including that the claims were barred by the free public services doctrine. The trial court dismissed the complaint, and on interlocutory appeal we affirmed on the ground that the free public services doctrine barred the negligence and public nuisance claims. See *Walker County v. Tri-State Crematory*, 284 Ga. App. 34, 36-40 (1) (643 SE2d 324) (2007) ("*Walker I*").

While the defendants' motions to dismiss the first amended complaint were pending, Walker County filed a second amended complaint, which was not addressed in the trial court's dismissal order or in *Walker I*. See *Walker I*, 284 Ga. App. at 36, n. 1. That complaint added a claim against all of the defendants under the contribution provision of the HSRA, OCGA § 12-8-96.1 (e), which states in part: "During or following the undertaking of any corrective action, any person may seek contribution from any other person who has contributed or is contributing to any release of a hazardous waste, a hazardous constituent, or a hazardous substance." According to the second amended complaint, some of the human remains found and removed from the crematorium property contained formaldehyde, allegedly a hazardous waste, hazardous constituent, and hazardous substance under the HSRA. See OCGA §§ 12-8-62 (9), (10); 12-8-92 (4). The complaint further alleged that the defendants contributed to the release of the formaldehyde upon the property. Finally, the complaint alleged that Walker County was entitled to seek contribution from the defendants for the costs the county incurred in abating the nuisance because the county's abatement efforts constituted the undertaking of a corrective action.

On remand from *Walker I*, the defendants moved to dismiss the second amended complaint for failure to state a claim upon which relief could be granted. They contended that the "corrective action" referenced in OCGA § 12-8-96.1 (e) does not contemplate action taken independently by a party without the involvement of the EPD

Director. Because Walker County sought contribution based solely on its unilateral decision to abate the alleged nuisance on the crematorium property, the defendants argued that Walker County's contribution claim must be dismissed. Alternatively, the defendants contended that Walker County could not pursue its claim under OCGA § 12-8-96.1 (e) because only joint tortfeasors allegedly could invoke the statutory right to contribution.

The trial court granted the defendants' motions to dismiss the second amended complaint. This appeal followed.

1. Walker County contends that the "corrective action" referred to in OCGA § 12-8-96.1 (e) encompasses voluntary clean up activities undertaken by a person without the involvement of the EPD Director. In light of the language and structure of the HSRA, we cannot agree.

The HSRA proclaims that it is the public policy of this state "to require corrective action for releases of hazardous wastes, hazardous constituents, and hazardous substances, without regard to when such releases may have occurred." OCGA § 12-8-91 (a). To that end, the HSRA provides:

> Whenever the director has reason to believe that there is or has been a release of hazardous wastes, hazardous constituents, or hazardous substances into the environment, regardless of the time at which release . . . occurred, and has reason to believe that such release poses a danger to health or the environment, the director shall make a reasonable effort to identify each person who has contributed or who is contributing to such a release. The director shall then notify each such person in writing of the opportunity to perform voluntarily corrective action in accordance with an administrative consent order entered into with the director within such period of time as may be specified by the director in written correspondence to the person. If the person fails or refuses to enter into an administrative consent order with the director within the period of time specified by the director, the director may issue an order directed to any such person. The order may direct that necessary corrective action be taken within a reasonable time to be prescribed in the order.

OCGA § 12-8-96 (a). If the administrative order is not followed or the necessary corrective action cannot be obtained from the responsible persons, the EPD Director through the agency itself or EPD contractors may "undertake corrective action." OCGA § 12-8-96 (b). See also OCGA §§ 12-8-92 (1); 12-8-96 (c).

OCGA § 12-8-96.1 then sets forth the liability provisions of the HSRA. Subsection (a) states that

> [e]ach and every person who contributed to a release of a hazardous waste, a hazardous constituent, or a hazardous substance shall be jointly, severally, and strictly liable to the State of Georgia for the reasonable costs of activities associated with the cleanup of environmental hazards, including legal expenses incurred by the state pursuant to subsection (a) of Code Section 12-8-96, as a result of the failure of such person to comply with an order issued by the director. . . . Costs and damages incurred by the state may be recovered in a civil action instituted in the name of the director.[1]

OCGA § 12-8-96.1 (a). In turn, OCGA § 12-8-96.1 (e) provides for a right of contribution:

> *During or following the undertaking of any corrective action,* any person may seek contribution from any other person who has contributed or is contributing to any release of a hazardous waste, a hazardous constituent, or a hazardous substance. Such claims for contribution shall be governed by the law of this state. In resolving contribution claims, the court may allocate costs among liable parties using such equitable factors as the court determines to be appropriate. In any action filed by the director for the recovery of costs and damages pursuant to this Code section, any third-party claim for contribution may, upon the motion of the director, be severed and maintained as a separate action.

(Emphasis supplied.)

Under the principles of statutory construction, "in construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole." (Citation omitted.) *Footstar v.*

---

[1] In two limited circumstances, a person can be held liable under OCGA § 12-8-96.1 (a) even if no administrative order is issued to that person:
> [I]f the director is unable to identify such person prior to the commencement of clean-up action after making a reasonable effort to do so pursuant to such Code section, or if such person contributed to a release which resulted in an emergency action by the director and issuance of such an order would cause a delay in corrective action that could endanger human health and the environment.

OCGA § 12-8-96.1 (a).

*Liberty Mut. Ins. Co.*, 281 Ga. 448, 450 (637 SE2d 692) (2006). Different parts of a statutory scheme should be read in a manner that renders them consistent and harmonious. Id. Applying these principles, we conclude that the "corrective action" referenced in OCGA § 12-8-96.1 (e) does not contemplate environmental clean up efforts undertaken independently by a party without the involvement of the EPD Director. Rather, when read in conjunction with OCGA §§ 12-8-96 (a) and 12-8-96.1 (a), it is clear that "corrective action" taken by a person refers to action taken pursuant to an administrative consent order entered with the EPD Director, or action taken pursuant to an administrative order issued by the EPD Director directing that the necessary action be taken.[2]

Our interpretation of "corrective action" is buttressed by our holding in *Reheis v. Baxley Creosoting & Osmose Wood Preserving Co.*, 268 Ga. App. 256, 258 (1) (601 SE2d 781) (2004), that with two limited exceptions,[3] "[i]t is clear from [the HSRA] statutory scheme that an order issued by the director providing each person the opportunity to perform corrective action is a prerequisite to the imposition of individual liability." Moreover, in *McElmurray v. Augusta-Richmond County*, 274 Ga. App. 605, 613 (3) (618 SE2d 59) (2005), we construed the HSRA as creating "an *administrative* environmental-cleanup procedure," and clearly such a procedural scheme must contemplate the involvement of the administrative agency itself in the clean up process. (Emphasis supplied.)[4]

Finally, we note that the statutory definition of a "[p]erson who has contributed or who is contributing to a release" of a hazardous

---

[2] Walker County argues that because the HSRA is a remedial statute, "corrective action" should be construed liberally in favor of the county's more expansive interpretation. But this rule of liberal construction applies only when a statutory term is uncertain or ambiguous. See *Reheis v. Baxley Creosoting & Osmose Wood Preserving Co.*, 268 Ga. App. 256, 259 (1) (601 SE2d 781) (2004). No such uncertainty or ambiguity exists in the present case when "corrective action" is read in conjunction with the statutory scheme as a whole. Walker County also argues that anything other than a liberal construction of the term "would provide a disincentive for a private party to undertake remediation efforts voluntarily." However, a party who wishes to undertake voluntary remediation efforts can do so through an administrative consent order entered with the EPD Director. See OCGA § 12-8-96 (a). In any event, the proper calibration of incentives is for the General Assembly, not this Court, to decide through the statutory language the legislature chooses to employ, and here that language is certain and unambiguous in light of the entire statutory scheme.

[3] See footnote 1, supra. Notably, even the two exceptions to the issuance of an administrative order plainly contemplate the involvement of the EPD Director in the clean up process.

[4] Walker County relies upon *Briggs & Stratton Corp. v. Concrete Sales & Svcs.*, 20 FSupp.2d 1356, 1375 (IV) (A) (M.D. Ga. 1998), in support of the county's interpretation of "corrective action." A federal district court opinion is not binding on this Court. See *Holland v. Independent Fire Ins. Co.*, 168 Ga. App. 761, 762 (2) (310 SE2d 297) (1983). Nor are we persuaded by the federal opinion, which was decided before our decisions in *Reheis* and *McElmurray*, both of which provide guidance in how the HSRA statutory scheme should be construed.

waste, constituent, or substance is extensive. See OCGA § 12-8-92 (9).[5] And all persons who contribute to the release are *strictly* liable for the costs associated with the clean up of the environmental hazard. See OCGA § 12-8-96.1 (a). Given the broad scope of liability imposed by the HSRA, we are reluctant to construe its provisions in the expansive manner advocated by Walker County without a clear legislative directive to do so.

For these combined reasons, we conclude that Walker County cannot seek contribution from the defendants under OCGA § 12-8-96.1 (e) for the costs associated with the county's voluntary clean up of the crematorium property done without the involvement of the EPD Director. The trial court thus did not err in dismissing Walker County's second amended complaint.

2. Based on our conclusion in Division 1, we do not reach Walker County's remaining enumeration of error, which is moot.

*Judgment affirmed. Ruffin, P. J., and Andrews, J., concur.*

DECIDED JULY 2, 2008 — 

*Coppedge, Leman & Ward, Joseph T. Leman, Joseph B. Evans,* for appellant.

*Goins, Carpenter, James & Lockett, Stuart F. James, Jenkins & Olson, Frank E. Jenkins III, Zirkle & Hoffman, Charles B. Zirkle,*

---

[5] "Person who has contributed or who is contributing to a release" is defined as:
(A) The owner or operator of a facility;
(B) Any person who at the time of disposal of any hazardous waste, hazardous constituent, or hazardous substance owned or operated any facility at which such hazardous waste, hazardous constituent, or hazardous substance was disposed of;
(C) Any person who by contract, agreement, or otherwise arranged for disposal or treatment of or arranged with a transporter for transport for disposal or treatment of hazardous wastes, hazardous constituents, or hazardous substances owned or possessed by such person or by any other party or entity at any facility owned or operated by another party or entity and containing such hazardous wastes, hazardous constituents, or hazardous substances. A person who arranged for the recycling of recovered materials consisting solely of scrap paper, scrap plastic, scrap glass, scrap textiles, scrap rubber other than whole tires, scrap metal or spent lead-acid, nickel-acid, nickel-cadmium, and other batteries, and not consisting of any residue from a pollution control device, shall not be deemed to have arranged for treatment or disposal under this subparagraph; and
(D) Any person who accepts or accepted any hazardous wastes, hazardous constituents, or hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from or at which facility or site there is a release of a hazardous waste, a hazardous constituent, or a hazardous substance.
OCGA § 12-8-92 (9).

*Jr., Weinberg, Wheeler, Hudgins, Gunn & Dial, John M. Hawkins, Larry B. Hill, Donald F. Oliver*, for appellees.