**SECOND DIVISION
BARNES, P. J.,
ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**June 29, 2012**

# In the Court of Appeals of Georgia

A12A0148. BARRETT PROPERTIES, LLC et al. v. ROBERTS CAPITOL, INC. et al.    AD-007

ADAMS, Judge.

Barrett Properties, LLC ("Barrett") and CEA, LLC, formerly known as Capitol USA, LLC and ESHCO, LLC ("CEA") sued, among others, Roberts Capitol, Inc., Q. E. P. Co., Inc., and Roberts Consolidated Industries, Inc. (the "Roberts Defendants"), for damages arising out of the alleged chemical contamination of an adhesives manufacturing facility in Whitfield County (the "Site"). The trial court granted the Roberts Defendants' motion for summary judgment on all claims. On appeal, Barrett and CEA argue that the trial court erred in awarding summary judgment to the Roberts Defendants on their trespass, nuisance, negligence and strict liability claims (the "common law tort claims"), as well as on their statutory contribution claim. We

agree with the trial court that Barrett's and CEA's common law tort claims fail for lack of evidence that the Roberts Defendants proximately caused them any harm and, as to the statutory contribution claim, that Barrett and CEA did not show that they had taken "corrective action" for purposes of seeking contribution under OCGA § 12-9-96.1 (e). Accordingly, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. See *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

So viewed, the evidence shows that Barrett is the current owner of the Site and CEA is a former owner. The Site has been used since 1994 as an adhesives manufacturing facility. In 2004, an environmental assessment showed that a number of volatile organic compounds (VOC) were present in the soil and groundwater. The assessor concluded that this contamination was possibly attributable to a 1995 tanker truck spill.[1] The EPD was notified of a release of trichloroethene and achloroethene

---

[1] Barrett and CEA sued, in addition to the Roberts Defendants, the driver of the tanker truck, Frank Parham, the owner of the truck, Nichols Transport Co., Inc., and the supplier of the spilled product, Giant Resource Recovery-Sumter, Inc. f/k/a

to the soil at the Site. CEA, through a consultant, submitted corrective action plans to the EPD in August 2006 (the "2006 CAP") and June 2009 (the "2009 CAP").

The Roberts Defendants leased the Site from Barrett in 2005 and continued the adhesives manufacturing operation. In April 2008, an analysis of groundwater samples taken from one of the monitoring wells at the Site showed a sharp increase in concentrations of the VOC toluene, a solvent which, the parties agree, is used in the adhesives manufacturing process. According to the affidavit of geologist Kirk Kessler, a ground water monitoring well on the Site ("MW-2") showed an increase in toluene concentrations "from 4 [parts per billion ("ppb")] during sampling events in June and September of 2004 to a peak of 1090 ppb during a sampling event during April of 2008." This, Kessler avers, "indicates that a new release of toluene occurred at some point between September of 2007 and April of 2008."[2] As Barrett and CEA

_____

Southeastern Chemical & Solvent Co., Inc. (the "Nichols Defendants"). Barrett and CEA appealed from the trial court's order granting summary judgment to the Nichols Defendants, but they have withdrawn that appeal, leaving the Roberts Defendants as the only appellees.

[2] Kessler also deposed that, "I don't have an opinion whether the toluene was a result of Roberts or past operators. . . . It does not appear the magnitude of that release will drive the need for corrective action."

3

admit, however, "[t]oluene concentrations at MW-2 . . . dropped to 410 ppb in October 2008 and subsequently returned to a non-detect status."

The evidence also showed that an environmental consultant, Dr. Aaron Williams, visited the Site during the time it was occupied by the Roberts Defendants. He observed some "chem absorb" in the drum storage area, which may have been related to a spill. Williams also testified that "I have no idea what the material spilled was," and, further, that "I don't remember toluene being an issue based on the risk reduction standards."

1. The trial court concluded that the evidence presented in support of the common law tort claims failed to show that the Roberts Defendants proximately caused any harm to Barrett or CEA. "The four elements to any tort action are a duty, a breach of that duty, causation and damages." *Traina Enterprises v. RaceTrac Petroleum*, 241 Ga. App. 18 (525 SE2d 712) (1999) (footnote omitted).

> To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly

4

balanced, it becomes the duty of the court to grant summary judgment for the defendant.

*Grinold v. Farist*, 284 Ga. App. 120, 121-122 (1) (643 SE2d 253) (2007) (citation and punctuation omitted).

Barrett and CEA argue that April 2008 toluene detection at MW-2 was evidence of a recent spill at the Site, and that the circumstantial evidence, including the Roberts Defendants' operations on the Site from 2005 onward, pointed to the Roberts Defendants as the source of that spill. The spike in toluene detected in samples taken from a monitoring well in 2008 was short-lived, however, with the 2009 and 2010 samples, as described by geologist Kessler, "too low for the analytical method used to test for its presence to indicate that the target chemical is present in the sample." As Barrett and CEA acknowledge, toluene was detected at the Site before the Roberts Defendants occupied the property. Thus, even if the spike in toluene readings at MW-2 can be attributed to the Roberts Defendants, Barrett and CEA cannot point to the Roberts Defendants as the source of any toluene contamination that is presently detectable on the Site.

Barrett and CEA suggest that even if there is a lack of evidence that any current contamination at the Site is attributable to the Roberts Defendants, there is

nevertheless evidence that the Roberts Defendants caused them harm. Specifically, they argue that there is at least circumstantial evidence that the Roberts Defendants were responsible for the release of toluene reflected by the spike in toluene concentrations detected at MW-2, which, in turn, caused the EPD to require CEA to assess that increase. Barrett and CEA contend that they are entitled to recover the additional environmental assessment costs and attendant professional fees associated with that investigation.

Even if we assume, without deciding, that the circumstantial evidence is sufficient for a trier of fact to conclude that the Roberts Defendants spilled the toluene reflected in the April 2008 measurements at MW-2, Barrett and CEA do not support their argument that they were harmed thereby because the EPD required additional assessments. Rather, Barrett and CEA represented to the trial court at the motion hearing that, "[i]n connection with the [Roberts Defendants] claim, there was no notification to the EPA or EPD." In their brief in opposition to the motion for summary judgment below, Barrett and CEA represented that, other than the 1995 spill, there is no evidence of a release of a "reportable quantity" of hazardous chemicals at the Site. And as the Roberts Defendants point out, Barrett and CEA

6

provide no record citation to support their assertion that the EPD required an investigation of the April 2008 toluene concentrations.[3]

In light of the foregoing, there is a lack of evidence that the Roberts Defendants were the proximate cause of any harm to Barrett and CEA. It follows that the trial court did not err in awarding summary judgment to the Roberts Defendants on Barrett's and CEA's common law tort claims.

2. Barrett and CEA also sought contribution from the Roberts Defendants pursuant to OCGA § 12-8-96.1 (e). This provision provides, in pertinent part, that "[d]uring or following the undertaking of any corrective action, any person may seek contribution from any other person who has contributed or is contributing to any release of a hazardous waste, a hazardous constituent, or a hazardous substance." In

---

[3] Barrett and CEA do cite the 2009 CAP and the deposition of Kirk Kessler as evidence that they notified the EPD of the substantial increase in toluene. The 2009 CAP shows a "single detection of toluene" at MW-2 below the risk reduction requirement. The cited portion of Kessler's deposition generally refers to toluene soil contamination, which was below the EPD notification requirement, and when asked about the notification requirements applicable to toluene in ground water, Kessler indicated that "I can't verify it without looking it up."

Barrett and CEA also cite a November 2008 Source Investigation Report to show that they contracted for a required environmental assessment and reported the findings to the EPD. The source investigation report references an EPD notice of deficiency regarding "March and June 2008 sampling events." The report does not, however, discuss toluene in ground water and focuses on numerous other VOCs present at the Site.

7

*Walker County v. Tri-State Crematory*, 292 Ga. App. 411, 414 (1) (664 SE2d 788) (2008) we held that, for purposes of this statute, "'corrective action' taken by a person refers to action taken pursuant to an administrative consent order entered with the EPD Director, or action taken pursuant to an administrative order issued by the EPD Director directing that the necessary action be taken." Id. at 415 (1).

The trial court granted summary judgment to the Roberts Defendants on the statutory contribution claim because there was no evidence that a consent or remediation order had been issued by the EPD to either Barrett or CEA, and, therefore, they could not show that they had taken the required "corrective action" for purposes of OCGA § 12-8-96.1 (e). Barrett and CEA acknowledge that this issue is controlled by our decision in *Walker County*. They contend, however, that *Walker County* was wrongly decided by this Court and should be overturned and, alternatively, that the trial court interpreted *Walker County* too broadly. We disagree.

Barrett and CEA argue that *Walker County* was wrongly decided because the Legislature did not limit in any way the private right of contribution it had created via OCGA § 12-8-96.1 (e), and there was no reason for this Court to supply a meaning for "corrective action" so as to provide a disincentive to voluntary remediation efforts by private parties. But in deciding *Walker County* we have already set forth, at length,

8

the reasons for our construction of OCGA § 12-8-96.1 (e), see 292 Ga. App. at 413-416 (1), and Barrett and CEA provide no good reason for this Court to now overturn this established precedent. Further, the trial court did not misapply *Walker County*. We have defined "corrective action" for purposes of OCGA § 12-8-96.1 (e), see *Walker County,* 292 Ga. App. at 415 (1), and the trial court simply applied that definition to the evidence of record. We find no error.[4]

For the foregoing reasons, the trial court's order must be affirmed.

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*

---

[4] The Roberts Defendants' request for frivolous appeal sanctions is denied.