**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 2, 2017**

# In the Court of Appeals of Georgia

A17A1298. CURLES et al. v. PSYCHIATRIC SOLUTIONS, INC. et al.

A17A1299. KERN et al. v. PSYCHIATRIC SOLUTIONS, INC. et al.

BETHEL, Judge.

Beverly Kern, individually and on behalf of the children of Donna Kern, and Harriet Curles and Tillie Knight, individually and on behalf of the children of William Chapman (collectively, the "Plaintiffs") appeal from the trial court's order granting the motion to dismiss Plaintiffs' third amended complaint (the "Third Complaint") filed by Universal Health Services ("UHS") and Psychiatric Solutions, Inc.'s ("PSI") (collectively, the "Corporate Defendants"). Via the Third Complaint, Plaintiffs brought wrongful death actions alleging ordinary and medical negligence against the owners, operators, and employees of a psychiatric treatment facility that treated and released a patient who later killed two persons. Plaintiffs argue that the trial court erred by finding (1) that Counts II and III of the Third Complaint are

medical malpractice claims; (2) that Plaintiffs' claims are barred by the statute of repose; (3) that the Third Complaint related back to a renewal complaint filed in this case after an earlier voluntary dismissal of the action; (4) that the Corporate Defendants were not equitably estopped from raising the statute of repose as a defense; and (5) that the Corporate Defendants should be dismissed from the case entirely. For reasons explained below, we reverse the trial court's grant of the motion to dismiss.

"A motion to dismiss may be granted only where a complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of his or her claim. We review the trial court's ruling on a motion to dismiss under the de novo standard of review." *Walker Cty. v. Tri-State Crematory*, 292 Ga. App. 411, 411 (664 SE2d 788) (2008) (citation omitted). With these principles and standards in mind, we will turn to the case before us.

This case arises from the deaths of Donna Kern and William Chapman at the hand of Amy Kern. Amy Kern had an extensive mental health history dating back to 1999, and she suffered from a series of psychotic breaks which resulted in violent conduct. Between November 2008 and January 2009, Amy was an involuntary patient at Focus by the Sea (hereinafter "Focus"), a private psychiatric facility, on three

2

separate occasions.[1] Amy's first involuntary committal to Focus came after she attempted suicide. She remained at Focus for ten days after that incident, and upon release on November 17, 2008, she voluntarily sought outpatient psychiatric treatment.

Amy was later arrested on December 28, 2008, after she chased her boyfriend around their home with an axe. As a condition of her release from custody, she was ordered to return to Focus for psychiatric treatment. Amy was treated at Focus for seven days and discharged on January 6, 2009.

Seven days later, on January 13, 2009, Amy was involuntarily committed to Focus for a third time by emergency room staff after threatening violence against her boyfriend. Fourteen days after her commitment, Amy was discharged from Focus on January 26, 2009. Twelve days after she was discharged from Focus, Amy killed her grandmother, Donna Kern, and her aunt's boyfriend, William Chapman.

On February 4, 2011, Plaintiffs sued the Corporate Defendants, HHC, Amy's treatment providers, and a pharmaceutical company for wrongful death (the "Original

---

[1]PSI owns the parent company of HHC St. Simons, Inc. ("HHC"). HHC St. Simons owns and operates the psychiatric facility Focus by the Sea and employs the doctors who treated Amy. UHS purchased PSI in 2010, after the incident giving rise to these lawsuits.

Complaint"). The Original Complaint alleged that the defendants breached their duty to exercise reasonable care to control Amy and that the defendants' actions constituted both medical and ordinary negligence. The Original Complaint was accompanied by an expert affidavit averring that the defendants breached the applicable professional standards of care. The Corporate Defendants filed a motion for summary judgment that was never ruled upon because Plaintiffs voluntarily dismissed without prejudice the Corporate Defendants from the original action on November 6, 2013.

On May 6, 2014, Plaintiffs filed a renewal complaint (the "Renewal Complaint") raising the same allegations as were stated in the Original Complaint, again naming the Corporate Defendants as parties. The Plaintiffs did not attach an expert affidavit to the Renewal Complaint. Eight days later, Plaintiffs moved to consolidate the Renewal Complaint with the Original Complaint, or in the alternative, amend the Original Complaint to add the Corporate Defendants back. Although the Corporate Defendants did not agree to consolidate the renewal action with the original action, the trial court granted the motion and amended the Original Complaint to add the Corporate Defendants back to the action.

4

On May 12, 2015, Plaintiffs filed their second amended complaint, and the Corporate Defendants moved to dismiss. On March 18, 2016, the trial court held a hearing on the motion.[2] Plaintiffs then filed the Third Complaint, and the Corporate Defendants moved to dismiss it. After two hearings on the motion, the trial court granted the Corporate Defendants' motion to dismiss the Third Complaint. This appeal followed.

1. *Count II.* Plaintiffs contend that the trial court erred in construing Count II of the Third Complaint as a medical malpractice claim because the failure to comply with statutory notification and discharge requirements pursuant to OCGA §§ 37-3-4, 37-3-24, and 37-3-95 did not involve the exercise of professional judgment. We agree.

OCGA § 37-3-4 provides in part that:

---

[2] The trial court granted the Corporate Defendants' motion to dismiss the second amended complaint on largely the same grounds as the order dismissing the Third Complaint. However, because Plaintiffs' filed the Third Complaint prior to the issuance of the court's decision on the second amended complaint, that dismissal of the second amended complaint is a nullity. *See Ga. Interlocal Risk Mgmt. Agency v. City of Sandy Springs*, 337 Ga. App. 340, 345 (1) (788 SE2d 74) (2016).

[a]ny hospital or any physician . . . who acts in good faith in compliance with the admission and discharge provisions of this chapter shall be immune from civil or criminal liability for his or her actions in connection with the admission of a patient to a facility or the discharge of a patient from a facility[.]

OCGA § 37-3-24 provides in part that:

[a]ny involuntary patient may apply to be transferred to voluntary status of hospitalization . . . and in any case in which a patient transferred to voluntary status is discharged, notice of such transfer or discharge, as the case may be, shall be given. . . . if the patient's hospitalization was ordered by the court, to the court which entered such order; if the patient was admitted to a facility [via physician's certificate,] to the physician or psychologist executing the certificate; and, if the patient was under criminal charges, of which the facility received written notification, by certified mail or statutory overnight delivery to the law enforcement agency originally having custody of the patient.

OCGA § 37-3-95 provides in part that:

[A] patient under criminal charges, notice of which charges have been given in writing to the facility, may only be discharged from the physical custody of a facility if the facility . . . provides written notification of the proposed discharge to the law enforcement agency originally having custody of the patient and the patient is discharged into the physical custody of a peace officer from that agency.

6

Here, Count II of the Third Complaint alleges that the Corporate Defendants violated OCGA §§ 37-3-94 and 37-3-95, thus committing negligence per se, when they failed to provide a notice of discharge to either the court that involuntarily committed Amy in November 2008 and again in January 2009 or the law enforcement agencies having control over Amy following her arrest. The trial court held that Plaintiffs' negligence per se claim was subject to the medical malpractice statute of repose, OCGA § 9-3-71 (b), and the expert affidavit statute, OCGA § 9-11-9.1, and dismissed the action on both grounds.

(a) The underlying negligent or wrongful act upon which Count II is based did not arise out of care or treatment for the benefit of Amy or involve the exercise of professional judgment. It instead arose out of a statutory duty to give notice. *See Carter v. Cornwell*, 338 Ga. App. 662, 666 (791 SE2d 447) (2016); *see also MCG Health, Inc. v. Casey*, 269 Ga. App. 125, 128 (603 SE2d 438) (2004). But in order for Plaintiffs' claim for negligence per se to reach a factfinder, Plaintiffs must show more than a mere violation of a statute.

Even "[a]ssuming that a violation of a statute or mandatory regulation has occurred, before negligence per se can be determined, a trial court must consider (1) whether the injured person falls within the class of persons it was intended to protect

7

and (2) whether the harm complained of was the harm [the statute] was intended to guard against." *Hubbard v. Dept. of Transp.*, 256 Ga. App. 342, 350 (568 SE2d 559) (2002) (citations and punctuation omitted). "[I]f the court finds negligence per se, the plaintiffs must then demonstrate a causal connection between the negligence per se and the injury. And it is generally a jury question as to whether or not such negligence proximately caused the injury." *Id.*

Although Count II of the Third Complaint does not specifically allege that the victims in this case fell within the class of persons OCGA §§ 37-3-94 and 37-3-95 were intended to protect, Count II contains allegations sufficient to permit us to infer the necessary element of a statutory violation, including the identification of the victims as members of the protected category, for purposes of this preliminary stage of the proceedings. *See, e.g.*, *Boyer v. Brown*, 240 Ga. App. 100, 102 (522 SE2d 692) (1999) (plaintiff injured by a drunk driver was "within the category of persons" Georgia's Open Container law, OCGA § 40-6-253, "was designed to protect, and the harm caused to her was the harm the statute was enacted to prevent"). *Compare Anderson v. Turton Dev., Inc.*, 225 Ga. App. 270 (483 SE2d 597) (1997) (defendants were entitled to summary judgment in tort action when plaintiff had recovered completely from an earlier auto accident such that she was not handicapped or elderly

8

and thus not "within the class for whose benefit" a set of building standards and the Georgia Handicap Act were promulgated). Accordingly, we conclude the Plaintiffs' claims of negligence per se in relation to the alleged statutory violation does not sound in medical or professional malpractice and is therefore not barred by the statute of repose[3] for medical malpractice actions and is not subject to the expert affidavit requirement set forth in OCGA § 9-11-9.1. We therefore agree with Plaintiffs that the trial court erred by dismissing Count II of the Third Complaint.

b) Plaintiffs next argue that the trial court erred in dismissing Count II because OCGA § 37-3-4 contemplates a private right of action.

OCGA § 37-3-4 does not expressly create a private right of action, but rather provides immunity from civil or criminal liability to "any hospital or any physician . . . who acts in good faith in compliance with the admission and discharge provisions[.]" Thus, OCGA § 37-3-4 provides defendants with "an affirmative defense," or a shield against liability. *Heath v. Emory Univ. Hosp.*, 208 Ga. App. 629,

---

[3]"[I]n no event may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred." OCGA § 9-3-71 (b). Because we have determined that this count sounds in ordinary negligence rather than medical malpractice, we do not need to address any issues relating to the statute of repose, including Plaintiffs' argument that the Corporate Defendants should be equitably estopped from raising that defense.

9

631 (431 SE2d 427) (1993) (affirming jury verdict for plaintiff who had shown that she had not been a "voluntary patient" such that defendants could be liable for false imprisonment).

However, because Plaintiffs' negligence per se claim in Count II may proceed based on the alleged violation of OCGA §§ 37-3-4, 37-3-24, and 37-3-95 as indicated in Division 1 (a), we need not reacht eh question of whether OCGA §§ 33-3-4 creates the much disfavored implied cause of action.

2. *Count III*. Plaintiffs next argue that the trial court erred in construing Count III of the Third Complaint as a medical malpractice claim. Plaintiffs contend that Count III sounds in ordinary negligence because the decision to discharge Amy from their facility was not a medical decision, but rather a decision based in part on a corporate policy of releasing patients when their insurance runs out. Because we agree with the Plaintiffs that Count III states a claim for ordinary negligence, the trial court erred in granting the Corporate Defendant's motion to dismiss based in part on Plaintiffs' failure to satisfy the affidavit requirement set forth in OCGA § 9-11-9.1.

(a) The Third Complaint alleges several instances in which Amy threatened or committed violent acts against others, each time prompting a response from law enforcement or the legal system and her arrest and confinement in inpatient mental

health care facilities. As the Third Complaint alleges, on December 24, 2008, police responded to a call following a domestic dispute between Amy and her live-in boyfriend. Four days later, on December 28, 2008, Amy was arrested after she chased her boyfriend with an axe. From that incident, she was charged, *inter alia*, with aggravated assault, terroristic threats and acts, battery, cruelty to children, and reckless conduct. After being admitted to inpatient care at Focus, her treatment provider, among other observations about her behavior, noted that she should be considered a danger to herself and others. A week after her discharge from Focus she was again involuntarily committed via a local emergency room by law enforcement after she threatened to kill her boyfriend with a tire iron. That stay at Focus included a physicians' assessment that Amy presented a threat of harm to herself and others. It was following this latest incident and admission to Focus that she was discharged on January 26, 2009, based on the recommendation by her treating physician that there were no reasons for her continued inpatient hospitalization. Amy killed Donna Kern and William Chapman twelve days after her release.

Based on these allegations in the Third Complaint, the Plaintiffs have stated a claim for relief pursuant to the principles announced in *Bradley Center, Inc. v. Wessner*, 161 Ga. App. 576 (287 SE2d 716) (1982) (aff'd by *Bradley Center, Inc. v.*

*Wessner*, 250 Ga. 199 (296 SE2d 693) (1982) (plurality)). In *Bradley Center*, this Court announced an exception to the general rule that there is no duty to control conduct of third persons to prevent them from causing physical harm to others. 161 Ga. App. at 580. This Court ruled that, due to the special relationship between the defendant mental health provider and the patient, the provider owed a duty to third parties. *Id.* Specifically, the Court explained that "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." *Id*. (quoting Restatement, Torts, 2d, §319).[4]

Here, Amy was involved in repeated instances involving violence and threats of violence, each of which prompted the involvement of law enforcement. After two of those incidents, Amy was confined and involuntarily committed to the care of Focus. According to the Third Complaint, at least two sets of records from her stays at the facility indicate the treatment providers' view that she posed a threat of danger

---

[4] In affirming *Bradley Center*, a plurality of the Supreme Court explained that the principle it adopted did not create a new tort but rather applied traditional tort principles of negligence to the facts of the case, namely facts relating to the decision of a mental health provider to discharge a patient from its care. *Bradley Center,* 250 Ga. at 202. The plurality noted that the cause of action was "not a malpractice case" but was rather an ordinary negligence case involving duties owed to third parties. *Id*. at 202.

to herself and others. These facts, as alleged in the Third Complaint, satisfy the requirement in *Bradley Center* that the Plaintiffs allege facts showing that the treatment provider had knowledge (or should have had knowledge) that the patient was likely to cause bodily harm to others if not controlled.

Further, we note that although in *Bradley Center*, the patient made a specific threat of violence against a specific person while in the care of the facility,[5] we do not believe this principle is limited to that specific scenario. If it were, so long as a patient never made reference to a specific person whom he or she intended to harm, the facility would have no duty to control the patient so as to prevent harm. Indeed, *Bradley Center*, in adopting the Restatement, explicitly utilized the formulation "others" in outlining the potential range of persons to whom the duty of care is owed. *Bradley Center*, 161 Ga. App. at 580. By not limiting the range of persons to whom the duty is owed to those persons specifically identified by the patient as potential victims, *Bradley Center* contemplates that the duty can be owed more broadly.

The case before us also contrasts sharply with this Court's decision in *Baldwin v. Hosp. Auth. of Fulton Cty,*[6] where we found under the circumstances in that case,

_____

[5] *See Bradley Center*, 161 Ga. App. at 576-78.

[6] 191 Ga. App. 787, 789 (383 SE2d 154) (1989).

13

the mental health provider owed no duty to third parties. In *Baldwin*, the record showed that the patient, who later killed his wife after being discharged from treatment, "had [during and prior to his treatment at the facility] not harmed or threatened to harm anyone other than himself, nor had he previously expressed [to others] an intention to harm anyone else." *Baldwin*, 191 Ga. App at 789. The case before us is easily distinguished from *Baldwin* because of Amy's personal history, namely the allegations in the Third Complaint regarding specific acts and threats of violence made against her boyfriend that precipitated her confinement.

Based on the allegations set forth in the Third Complaint in regard to Amy's history of threats and violent acts, and based on allegations showing that the treatment providers at the facility had determined that Amy presented a risk of harm to herself and others, we find that the Plaintiffs have stated a claim for relief under the principles set forth in *Bradley Center*. Such facts, if proven, would articulate a theory of recovery based on the Corporate Defendants' breach of a duty owed to protect third parties from harms posed by Amy. Such a claim sounds in ordinary negligence rather than medical malpractice. *Bradley Center*, 161 Ga. App. at 580.

(b) To the extent the Corporate Defendants contend that Count III of the Third Complaint was properly dismissed for Plaintiffs' failure to satisfy the affidavit

14

requirement set forth in OCGA § 9-11-9.1, as explained in Division 2 (a), Count III sufficiently alleges facts to support Plaintiffs' ordinary negligence claim which does not require an expert affidavit. "When we assess the sufficiency of the complaint on appeal, we must accept the allegations of fact that appear in the complaint and view those allegations in the light most favorable to the plaintiff." *Forsh v. Williams*, 321 Ga. App. 556, 560 (1) (740 SE2d 297) (2013) (footnote omitted). Notwithstanding our holding in Division 2 (a), we express no opinion about the credibility of any facts alleged by Plaintiffs, nor do we speculate about the likelihood of Plaintiffs being able to present evidence to support their allegations that the decision to discharge Amy was the result of a corporate policy. If over the course of the litigation, the evidence shows that the decision to discharge Amy was inextricably linked to the exercise of professional judgment by a medical professional, Count III would be subject to summary adjudication because such evidence alone would not support the claim of ordinary negligence set forth in Count III.

3. *Vicarious Liability*. As expressed in Divisions 1 and 2, this case survives only under theories of ordinary negligence and negligence per se, which moots the trial court's ruling that the medical malpractice statute of repose applies. Although the Corporate Defendants assert that Plaintiffs failed to raise the issue of vicarious

liability below, the record shows that in their opposition to the motion to dismiss, Plaintiffs argued that under *Bradley Center*, the Corporate Defendants could be vicariously liable for Focus and HHC's release of Amy.[7] The question remaining is thus whether the allegations of the Renewal Complaint and the Third Complaint relate back so as to survive the filing of these later complaints after the applicable two-year statute of limitation set forth in OCGA § 9-3-33.

The trial court found that the negligence count of the Third Complaint should not relate back to the Original Complaint because it was an "untimely, independent claim." This was error.

> To suspend the running of the statute of limitation in a renewal action, the cause of action must be substantially the same as in the original action. A defendant's liability cannot be enlarged beyond that indicated by the pleadings in the first case. [Thus] a plaintiff may not utilize the amendment provisions under OCGA § 9-11-15 (c) to attempt to add otherwise barred claims to renewal actions, when such claims are not substantially the same as the claims in the original action.

---

[7] The Corporate Defendants have not filed a cross-appeal. Because the trial court did not dismiss UHS and PSI on the basis of their status as parties different from Focus and/or HHC, the propriety of the order adding UHS and PSI as party defendants is not before us.

16

*Burns v. Dees*, 252 Ga. App. 598, 607 (1) (d) (557 SE2d 32) (2001) (citations, footnotes and punctuation omitted).

Count I of the Original Complaint alleged that the negligent acts included "discharging [Amy] because her medical insurance ceased paying for continued hospitalizations." Without any specifically enumerated count, the Renewal Complaint alleged that the Corporate Defendants committed negligence by "discharging [Amy] because her medical insurance ceased paying for continued hospitalizations." And Count III of the Third Complaint alleged that "[the Corporate Defendants] committed ordinary negligence by imposing a policy on HHC, Focus, and its medical staff, by which patients were to be discharged from Focus when their insurance would no longer pay for inpatient treatment" and that Amy was discharged "because her insurance would no longer pay for inpatient treatment." A fair reading of these allegations shows that they are substantially similar. Thus, the trial court erred when it concluded that the negligence counts of the Third Complaint did not relate back under OCGA § 9-11-15 (c).

*Judgment reversed. McFadden, P. J., and Branch, J., concur.*